The TRAINING ASSOCIATES
CORPORATION,
Petitioner

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Argued June 16, 2014.

Decided Oct. 16, 2014.

Kelley E. Kaufman, Harrisburg, for petitioner.

Gerard M. Mackarevich, Deputy Chief Counsel, and Shawn C. Westhafer, Assistant Counsel, Harrisburg, for respondent.

BEFORE: BERNARD L. McGINLEY, Judge, and RENÉE COHN JUBELIRER, Judge, and PATRICIA A. McCULLOUGH, Judge.

OPINION BY Judge COHN JUBELIRER[1].

The Training Associates Corporation (TTA) petitions for review of the Order of the Unemployment Compensation (UC) Board of Review (Board) finding Tameka Johnson (Claimant) not ineligible for UC benefits pursuant to Section 402(h) of the UC Law.[2] For the following reasons, we affirm the Board's Order.

## I. Background

Claimant was receiving UC benefits based on her separation from employment with Accolade, Incorporated (Accolade) when she sent résumés to various entities, including TTA, in an effort to obtain permanent, full-time employment. (Claim Record, R.R. at 7a; Board Op., Findings of Fact (FOF) ¶¶ 1, 11.) Claimant participated in two interviews with TTA, which resulted in Claimant signing an independent contractor agreement with TTA to train employees of Morgan Stanley for a four-week temporary assignment. (FOF ¶ 2.) Although Claimant was skilled as a trainer, Morgan Stanley required Claimant to undergo additional training on the use of its proprietary product before actually training its employees. (FOF ¶ 3.) Claimant performed the additional training beginning on March 19, 2012, from her home using her personal computer and internet connection. (FOF ¶¶ 3, 6.) On March 23, 2012, TTA notified Claimant that Morgan Stanley no longer required her services because an unspecified deficiency appeared in her background check. (FOF ¶ 7.)

Thereafter, Claimant reported wages of $795.00 and informed the UC Service Center that she had worked four days with TTA. (Claim Record, R.R. at 5a.) As a result, the UC Service Center sent TTA an employer questionnaire seeking information regarding Claimant's employment with TTA. (Employer Questionnaire, R.R. at 10a.) In response, TTA informed the UC Service Center that Claimant was never employed by TTA, but instead performed services for four days pursuant to a consulting agreement as an independent computer consultant. (Letter from TTA to UC Service Center (April 17, 2012), R.R. at 9a; Letter from TTA to UC Service Center (May 3, 2012), R.R. at 12a.) TTA also indicated on the employer questionnaire that Claimant was an independent contractor and that she only performed services for four days from her home office. (Employer Questionnaire, R.R. at 10a.)

Based on the information it received from TTA, the UC Service Center issued a Notice of Determination (Determination) on May 8, 2012 finding that Claimant was

---

1. This matter was reassigned to the majority writer on August 26, 2014.

2. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(h). Section 402(h) provided that "[a]n employe shall be ineligible for compensation for any week.... (h) [i]n which [she] is engaged in self-employment." *Id.*

working at TTA as an independent contractor customarily engaged in an independently established trade, occupation profession or business. (Notice of Determination, R.R. at 13a.) Accordingly, the UC Service Center deemed Claimant ineligible for ongoing UC benefits resulting from her previous separation from Accolade pursuant to Section 402(h) of the UC Law because she was now self-employed. (Notice of Determination, R.R. at 13a.) The UC Service Center also issued a Notice of Determination Overpayment of Benefit (Overpayment Notice) finding that Claimant had a fault overpayment because she is an independent contractor and ineligible for UC benefits. (Notice of Determination Overpayment of Benefit (Fault or NonFault), R.R. at 14a.)

Claimant appealed the UC Service Center's Determination finding her ineligible for UC benefits pursuant to Section 402(h). (Petition for Appeal, R.R. at 18a.) Therein, Claimant stated that she was not self-employed, that she took a temporary job that only lasted four days, and that she was continuing to look for full-time work. (Petition for Appeal, R.R. at 18a.) Claimant separately appealed the Overpayment Notice finding that she had a fault overpayment of UC benefits. (Petition for Appeal, R.R. at 20a.)

A telephone hearing was held by a UC Referee (Referee) on June 12, 2012. Claimant appeared pro se and testified on her own behalf. TTA appeared and was represented by its Director of Contracts and Compliance, who also testified. The Referee identified the primary issue to be resolved as whether Claimant was an employee of TTA or a self-employed independent contractor. (Referee Decision at 2, R.R. at 56a.) Based upon the evidence presented, the Referee determined that Claimant was not an independent contractor because she was not free from control

or direction over the performance of her services and that she was not customarily engaged in an independent trade or business. (Referee Decision at 2–3, R.R. at 56a–57a.) The Referee concluded that, because Claimant was not an independent contractor, she must be considered an employee of TTA and not denied UC benefits under Section 402(h). (Referee Decision at 3, R.R. at 57a.) Finally, the Referee determined that because Claimant was entitled to the UC benefits she received, no fault overpayment existed. (Referee Decision at 3, R.R. at 57a.) Accordingly, the Referee reversed the UC Service Center's Determination and cancelled the overpayment of benefits. (Referee Decision at 3, R.R. at 57a.)

TTA appealed the Referee's Decision to the Board, contending that Claimant was not its employee and it was not Claimant's employer. (Petition for Appeal of Decision of Referee, R.R. at 61a.) Upon review, the Board remanded to the Referee to develop a more complete record so that the Board could properly rule in this matter. (Board Order, August 24, 2012, R.R. at 64a.) After granting several continuances, a remand hearing was conducted via telephone by the Referee on December 6, 2012. Claimant appeared pro se and testified on her own behalf. TTA appeared and was represented by counsel. TTA again presented the testimony of its Director of Contracts and Compliance.

Based upon the evidence presented at both hearings, the Board made the following findings of fact:

1. In February 2012, the claimant provided a résumé to various entities, including Monster.com, CareerBuilder.com, and [TTA].

2. After two telephone interviews, the claimant signed an independent contractor agreement with TTA to train

Morgan Stanley (MS) employees for a four-week temporary assignment.

3. The claimant had skills as a trainer, but MS required further training to use its proprietary product, which she performed from her home using her computer and Internet connection.

4. The claimant would have been unable to find the MS job without going through TTA.

5. The claimant was scheduled to participate in a four-week training program, the first of which was performed from her home on her computer and Internet connection, while the next three weeks would have required the claimant to travel to MS's location.

6. During the claimant's training from March 19 through 22, 2012, she was paid $200.00 per day, which could have been negotiated and from which no taxes were withheld.

7. On March 23, 2012, TTA informed the claimant that MS no longer desired her services because of an unspecified deficiency in her background check.

8. The claimant communicated only with TTA, not MS.

9. The claimant never provided services to MS or visited MS's location.

10. TTA did not prohibit the claimant from performing similar services for other entities.

11. Except for a period performing administrative work through a staffing agency in 2002, before, during, and after performing services for TTA, the claimant pursued full-

time work as a permanent employee, not an independent contractor. (FOF ¶¶ 1–11.) The Board concluded that "[C]laimant was free from TTA's control and direction in performing services" from March 19, 2012 through March 22, 2012. (Board Op. at 2.) However, the Board concluded further that Claimant was not customarily engaged in an independently established trade or business. (Board Op. at 3.) The Board found Claimant's testimony credible "that she could not have found the job for MS without TTA and that, except for performing administrative work through a staffing agency in 2002, she has consistently pursued full-time work as a permanent employee, not an independent contractor." (Board Op. at 3.) The Board determined further that Claimant: (1) "did not hold herself out or advertise her services as a self-employed individual"; and (2) "merely networked and posted her résumé on various job Web sites."[3] (Board Op. at 3.) The Board stated that it could not conclude that "[C]laimant's isolated four-day training to provide services to MS, through TTA, establishes that she was customarily engaged in an independently established profession." (Board Op. at 3.) Thus, the Board determined that Claimant was not self-employed and, therefore, was eligible for UC benefits for the weeks at issue. (Board Op. at 3.) With respect to TTA's assertion that Claimant was not its employee, the Board stated as follows:

The Board is bound to adhere to the Pennsylvania Unemployment Compensation Law and unemployment compensation regulations as interpreted by the courts. Currently, no distinction is made between whether one is not self-employed and whether one is an employ-

3. The Board stated that it hoped that all unemployment individuals would network and post their résumés on job websites "in an effort to find full-time, permanent employment." (Board Op. at 3.)

ee. If a claimant is determined to be not self-employed, by definition, the claimant is entitled to benefits regardless of·how the Department's Bureau of Employer Tax Operations decides to assess the resultant taxes.

(Board Op. at 3.)

Accordingly, the Board granted Claimant UC benefits and determined that no overpayment existed. ‚ (Board Op. at 3.) TTA now petitions this Court for review of the Board's Order.[4]

## II. TTA's Appeal

### A. TTA's Position

In support of its appeal, TTA argues that the Board erred by addressing Claimant's employment relationship with TTA because the issue was not properly before the Board. TTA points out that·Claimant was already receiving UC benefits based upon her separation from Accolade, her previous employer, when she reported wages for her services as an independent contractor. TTA does not challenge Claimant's entitlement to continue receiving those benefits, but asserts that the proper issue for disposition was whether Claimant had lost her eligibility for continued benefits by becoming self-employed rather than whether Claimant was TTA's

employee. TTA contends that the analysis required to determine whether one is self-employed after becoming separated from an employer and, therefore, ineligible for benefits under Section 402(h), differs from the analysis of whether one is an employee or independent contractor under Section 4($l$)(2)(B) of the UC Law.[5] TTA argues that this dispute really concerns only Claimant and the Department of Labor and Industry (Department) and whether she was self-employed and, therefore, lost her previous eligibility for UC benefits. TTA argues that it had no prior notice that the proceedings before the Referee and the Board would address and decide whether Claimant was an employee of TTA. TTA also argues that the Board's opinion, while not necessarily conclusive or binding, could expose it to liability in ancillary proceedings.

TTA argues further, that pursuant to this Court's decisions in *Minelli v. Unemployment Compensation Board of Review,* 39 A.3d 593 (Pa.Cmwlth.2012) (en banc) and *Silver v. Unemployment Compensation Board of Review,* 34 A.3d 893 (Pa. Cmwlth.2011), it is inappropriate to drag, as a party, an alleged separating employer like TTA into these types of self-employment disputes between the Department and a claimant.[6] To do so, TTA asserts, is

4. This Court's review is limited to determining whether the Board's adjudication is in violation of constitutional rights, whether an error of law was committed, or whether the factual findings are supported by substantial evidence. *Nolan v. Unemployment Compensation Board of Review,* 797 A.2d 1042, 1045 n. 4 (Pa.Cmwlth.2002).

5. 43 P.S. § 753($l$)(2)(B). Section 4($l$)(2)(B) provides, in relevant part, as follows:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or di-

rection over the performance of such services both under h[er] contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

*Id.*

6. TTA also relies upon an unreported decision of this Court to support its arguments. *See Mitchell v. Unemployment Compensation Board of Review* (Pa.Cmwlth., No. 1910 C.D. 2011, filed August 17, 2012), slip op. at 2 n. 2, 2012 WL 8699950 (questioning the naming of an entity as the claimant's new separating employer on the notice of determination rather than naming the employer from which the

to place the burden on the alleged employer to prove that the claimant is self-employed and not its employee within the meaning of Section 4($l$) (2)(B) of the UC Law. TTA argues that the Board should have determined Claimant's self-employment without either involving TTA or determining whether it and Claimant were in an employment relationship.

While TTA does not challenge the Board's first ten findings of fact, TTA contends that the Board's finding of fact number 11 is essentially a conclusion of law that concludes that Claimant was a permanent employee of TTA. TTA asserts that the Board erred by addressing this issue and, as a result, the portion of the Board's opinion which determines that Claimant is TTA's employee because she is not self-employed must be reversed or vacated. TTA states that this solution would leave intact the Board's findings and conclusions that Claimant was not self-employed and, therefore, eligible to continue receiving UC benefits.

### B. Board's Position

In response, the Board argues that TTA's objection to the characterization of Claimant as its employee is "misguided due to a misunderstanding of the concept of 'employee' for the purposes of Section 402(h) of the [UC] Law." (Board's Br. at 12.) The Board asserts that its identification of TTA as a "separating employer" is supported by the UC Law and this Court's

precedent establishing this presumption. The Board further asserts that, although the employer normally has the burden of proving that a claimant is self-employed, where the Department initiates the proceedings that result in the suspension of a claimant's UC benefits because the claimant is self-employed, it is the Department's burden to prove that the claimant is self-employed. The Board argues, however, the fact that the Department has the burden does not negate the need to include in the proceedings an entity like TTA that has firsthand evidence of whether the claimant was engaged in self-employment. Therefore, the Board argues, because only TTA and Claimant had knowledge of their mutual relationship, TTA was properly named as a "separating employer." [7]

The Board argues further that determining that it erred by commenting on the employment relationship between Claimant and TTA would merely placate TTA without any true effect because the Board's conclusion that Claimant was not self-employed and the statement that Claimant was an "employee" is limited to restoring her eligibility for benefits earned from her previous employer before TTA. It means nothing else. The Board asserts that determining whether one is self-employed under Section 402(h) necessarily requires examination of the definition of "[e]mployment" in Section 4($l$)(2)(B) of the UC Law. The Board contends that, pursuant to Section 509 of the UC Law,[8] unless

---

claimant had previously separated and was receiving UC benefits as a result of such separation).

7. We note that while Claimant's claim record lists TTA as a separating employer, the Board lists TTA as the "purported employer" in the heading section of its opinion. (Board Op. at 1.)

8. 43 P.S. § 829. Section 509 provides as follows:

Any decision made by the department or any referee or the board shall not be subject to collateral attack as to any application claim or claims covered thereby or otherwise be disturbed, unless appealed from. Subject to appeal proceedings and judicial review, any right, fact or matter in issue which was directly passed upon or necessarily involved in any decision of a referee or the board or the Court and which has become final shall be conclusive for all pur-

an employer receives special notice required by that section a claimant's eligibility does not affect, in any way, an employer's exemption status for purposes of the UC Law. Finally, the Board contends that Claimant's eligibility has no bearing on future UC matters involving TTA and other claimants because " 'each unemployment case is examined on its own facts.' " (Board's Br. at 21 (quoting *Bankers Life and Casualty Company v. Unemployment Compensation Board of Review*, 750 A.2d 915, 918 n. 6 (Pa.Cmwlth.2000)).)

## C. Discussion

Initially, we note the unique nature of these types of proceedings in which a claimant who is receiving UC benefits as a result of her separation from full-time work as a permanent employee engages in a temporary, short-term assignment pursuant to an independent contractor agreement for which he or she reports wages to the Department. As exhibited by the facts in *Minelli, Silver* and this case, these claimants often accept such short-term assignments in an effort to secure another full-time job as a permanent employee. As noted by the Board, these claimants should be commended for their effort to again become gainfully employed in a permanent, full-time position. However, these proceedings do result in concern on the part of the claimants and the entities for which they performed the short-term temporary assignments when the Department initiates proceedings to determine whether the claimants should now be deemed self-employed and, therefore, no longer eligible to *continue* to receive the UC benefits they had been *previously receiving*.

In fact, these types of proceedings have also caused this Court to question the practice by the Department "of identifying any reported source of income as a new 'separating employer' " because "[i]t appears that such practice improperly burdens that party with an obligation to defend an action *initiated by the [Department]*." *Silver*, 34 A.3d at 896 n. 7 (emphasis in original). We expressed further concern in *Silver* that the Department's "practice erroneously suggests that the claimant is seeking benefits because of a separation from work *with that entity*, which is simply not the case. . . ." *Id*. (emphasis in original). We concluded that a consequence of this error is that "the analysis becomes incorrectly framed as an either/or situation, i.e., whether the claimant is either self-employed or is an employee of the putative employer." *Id*. We further clarified in *Silver* that, because the claimant's separation from an employer was not relevant to the Board's determination that the claimant was ineligible for UC benefits pursuant to Section 402(h) of the UC Law, the determination as to whether the claimant was self-employed could not be made using an either/or analysis. *Id*. at 899. However, in

poses of this act and shall not be subject to collateral attack as among all affected parties who had notice of such decision: Provided, however, That whenever an appeal involves a question as to whether services were performed by a claimant in employment or for an employer or whether remuneration paid constituted wages, a decision thereon shall not be conclusive as to an employing entity's liability for contributions unless the employing entity was given special notice of such issue and of the pendency of the appeal and was afforded a reasonable opportunity by the referee or the board to adduce evidence bearing on such question. No finding of fact or law, judgment, conclusion or final order made with respect to a claim for unemployment compensation under this act may be deemed to be conclusive or binding in any separate or subsequent action or proceeding in another forum.
*Id*.

*Silver*, the new "separating employer" did not challenge the Department's practice as TTA has done in this matter. Thus, we did not have the opportunity to fully address and clarify the impact of the Department's practice and the effect of a Board determination on an entity, such as TTA, regarding a claimant's continued eligibility in situations such as the one presented here.

The Referee in this case applied an either/or analysis and determined that, because Claimant was not an independent contractor, she must be considered an employee of TTA. Pursuant to *Silver*, this was incorrect. The Board, however, did not specifically find or conclude that because Claimant was not self-employed, she was necessarily an employee of TTA. While the Board stated in finding of fact number 11 that Claimant pursued full-time work as a permanent employee before, during, and after performing services for TTA, this finding does not state or conclude that Claimant was a full-time, permanent employee of TTA. (FOF ¶ 11.) Specifically, finding of fact number 11 states that "[e]xcept for a period performing administrative work through a staffing agency in 2002, before, during, and after performing services for TTA, the claimant pursued full-time work as a permanent employee, not an independent contractor." (FOF ¶ 11.) As stated, this finding relates to the issue of whether Claimant was customarily engaged in a trade or profession.

■ In addition, in the discussion portion of its opinion after concluding that Claimant was not self-employed and in addressing TTA's argument that Claimant was not its employee, the Board points out that "[i]f a claimant is determined to be not self-employed, by definition, the claimant is entitled to benefits regardless of how the Department's Bureau of Employer Tax Operations decides to assess the resultant taxes." (Board Op. at 3.) In other words, the Board's determination that Claimant was not self-employed does not mean that TTA will be charged by the Bureau of Employer Tax Operations as Claimant's employer. As the Board indicates, each UC case is examined on its own facts and, in this matter, because Claimant was found not to be self-employed because she performed limited services, she remained eligible to continue to receive UC benefits based upon her separation from her *previous* employment with Accolade. In other words, Claimant remained eligible to receive UC benefits as a former employee of Accolade, without regard to her status with TTA. Since there was no finding that Claimant was an employee of TTA or that TTA was Claimant's employer, there should be no effect on TTA as a result of the limited findings in this case.

■ Although the analysis in this proceeding should not be framed as an either/or situation, there must be a mechanism to determine, in the first instance, whether a claimant who reports wages received from a short-term, temporary assignment as an independent contractor is engaged in self-employment for UC purposes. This is because "there is a presumption in the [UC] Law that an individual receiving wages is an employee and not . . . engaged in self-employment." *Pasour v. Unemployment Compensation Board of Review*, 54 A.3d 134, 137 (Pa.Cmwlth. 2012). This presumption can be overcome by establishing that the claimant was: "(a) free from control or direction over the performance of such services both under [her] contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business." *Minelli*, 39 A.3d at 595 (quoting Section 4(*l*)(2)(B) of the UC Law, 43 P.S. § 753(*l*)(2)(B)) (alteration in original).

Normally, the separating employer is charged with establishing these two prongs in order to prove that a person rendering services for wages is an independent contractor, id. at 596, but where the Department has initiated the proceedings that resulted in a suspension of UC benefits because of self-employment, it carries the burden, *Silver*, 34 A.3d at 896 n. 7. In either situation, it is critical that all of the facts and evidence regarding the relationship between the claimant and the purported "separating employer" be presented.

■ Therefore, because Claimant received wages from TTA for services performed pursuant to an independent contract agreement, TTA must be included in the proceedings, albeit not necessarily as a party, in order for all of the evidence to be before the decision maker. In reaching this conclusion, we do not discount our concern in *Silver* that the Department's "practice of identifying any reported source of income as a new 'separating employer'" appears to improperly burden that entity "with an obligation to defend an action *initiated by the [Department]*." *Silver*, 34 A.3d at 896 n. 7 (emphasis in original). However, as explained by the Board in this matter, in examining whether a claimant is self-employed, the entity that has firsthand evidence of whether the claimant was engaged in self-employment must necessarily be initially named as a new "separating employer" in order for that entity to have notice and an opportunity to present such evidence.

■ Thus, the finding that Claimant was not self-employed for purposes of rendering her eligible to continue receiving the UC benefits to which she was already entitled does not, in this case, mean that Claimant was an employee of TTA. Although TTA also argues that it had no prior notice that the proceedings before the Referee and the Board would address and decide whether Claimant was an employee of TTA, TTA had received an employer questionnaire and, in response, TTA informed the Department that it was not Claimant's employer and that Claimant was an independent contractor. TTA was also notified that the issue to be considered in Claimant's appeal from the UC Service Center's Determination was whether Claimant was engaged in self-employment. (Notice of Hearing, R.R. at 26a.) TTA appeared at both hearings before the Referee and presented evidence purporting to show that Claimant was, in fact, self-employed and not its employee. Accordingly, we conclude that TTA's due process rights were not violated.

TTA has also asked this Court to vacate that portion of the Board's opinion which addresses TTA's assertion that Claimant is not its employee because it believes the Board's opinion could expose it to liability in ancillary proceedings. TTA concedes that the Board's findings of fact and conclusions of law are not conclusive or binding in any separate or subsequent proceedings in another forum under Section 509 of the UC Law, 43 P.S. § 829. (TTA's Reply Br. at 7.) However, TTA cites to this Court's decision in *Stauffer v. Unemployment Compensation Board of Review*, 74 A.3d 398, 400 n. 2 (Pa.Cmwlth.2013), wherein we noted that the petitioner's appeal was not moot because the determination that the petitioner was an employer had a direct adverse effect on the petitioner of subjecting her to potential UC tax liability. In this matter, the Board did not specifically find that TTA was Claimant's employer. The Board's opinion only determined that Claimant was not disqualified from continuing to receive UC benefits based on her previous separation from Accolade.

## III. CONCLUSION

Accordingly, to the extent that there is any confusion, we hereby clarify that there has been no finding by the Board that Claimant was or is TTA's employee and the record in this matter would not support such a finding. The Board's Order is affirmed.[9]

### ORDER

**NOW,** October 16, 2014, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED.**

___

9. Because we conclude that there was no finding by the Board that Claimant was an employee of TTA and TTA does not challenge Claimant's eligibility to continue to receive UC benefits based on her prior separation from Accolade, we do not need to address TTA's assertion that the Board erred by finding that Claimant was not an independent contractor because she was not customarily engaged in an independently established trade, occupation, profession or business.