Donald Lowman,  :
           Petitioner  :
             :
          v.  :  No. 686 C.D. 2016
             :  Argued: May 3, 2017
Unemployment Compensation Board  :
of Review,  :
           Respondent  :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE JOSEPH M. COSGROVE, Judge[1]

OPINION
BY PRESIDENT JUDGE LEAVITT[2]          FILED: January 24, 2018

Donald Lowman (Claimant) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) that affirmed the Referee's decision that Claimant was ineligible for benefits under Section 402(h) of the Unemployment Compensation Law (Law).[3] The Board concluded that Claimant's work as an Uber driver constituted self-employment that rendered him

---

[1] This case was argued before an *en banc* panel of the Court that included former Judge Julia K. Hearthway. Because Judge Hearthway's service on the Court ended September 1, 2017, this matter was submitted on briefs to Judge Cosgrove as a member of the panel.

    This case was decided before Judge Cosgrove's service on the Court ended on December 31, 2017.

[2] This case was reassigned to the opinion writer on December 5, 2017.

[3] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(h). In relevant part, Section 402(h) provides that "an employe shall be ineligible for compensation for any week in which he is engaged in self-employment…." 43 P.S. §802(h).

ineligible for unemployment compensation for which he was otherwise entitled by reason of losing his job as a behavioral health specialist. Because the Department of Labor and Industry (Department) did not demonstrate that Claimant intended to enter into an independent business venture by becoming an Uber driver, we conclude that he remains eligible for benefits as a matter of law.[4] Accordingly, we reverse the Board's April 22, 2016, order and remand for further proceedings.

Claimant was employed as a behavioral health specialist by Resources for Human Development (Separating Employer). When he lost his job, he filed a claim for unemployment compensation benefits, effective June 14, 2015. While awaiting a determination, Claimant entered into a software license and online service agreement (Agreement) with Raiser, LLC, which is a wholly-owned subsidiary of Uber Technologies, Inc. (Uber). In accordance with the terms of the Agreement, Claimant provides transportation to customers who request rides through Uber's mobile phone application. Claimant started providing these services through Uber on July 1, 2015.

On August 17, 2015, the UC Service Center determined that Claimant was not entitled to benefits notwithstanding the loss of his job with Separating Employer. The UC Service Center concluded that Claimant's enterprise as an Uber driver rendered him ineligible. Claimant appealed.

---

[4] Normally, the separating employer bears the burden of proving that a claimant is ineligible for unemployment benefits, "but where the Department has initiated the proceedings that resulted in a suspension of UC benefits because of self-employment, it carries the burden[.]" *Training Associates Corp. v. Unemployment Compensation Board of Review*, 101 A.3d 1225, 1234 (Pa. Cmwlth. 2014).

The UC Service Center denied Claimant benefits because of his work as an Uber driver; Uber is not Claimant's separating employer. Accordingly, the Department became the real party in interest and instituted the proceeding *sub judice*. Consistent with *Training Associates Corp.,* 101 A.3d at 1231, the Department bore the burden of proving that Claimant is ineligible for unemployment compensation.

At the hearing before the Referee, Claimant and Jordan Holtzman-Conston, a senior operations manager for Uber, testified. The parties also submitted documentary evidence into the record, including a copy of the Agreement and correspondence between Claimant and Uber. By decision and order dated October 30, 2015, the Referee affirmed the UC Service Center's decision. The Referee concluded that Claimant was self-employed as an Uber driver, and this disqualified him from receiving benefits as a result of his loss of employment with Separating Employer.

Claimant appealed to the Board, and it affirmed the Referee. Subsequently, the Board granted reconsideration, and it reaffirmed its adjudication on April 22, 2016.

The Board reasoned that Section 4(*l*)(2)(B) of the Law requires that two criteria be satisfied for a claimant to be considered self-employed: (1) the claimant must be free from control or direction in the performance of his service; and (2) the claimant must be customarily engaged in an independently established trade, occupation or business. 43 P.S. §753(*l*)(2)(B). The Board concluded that Claimant's work with Uber satisfied both prongs of the test because Claimant used his own mobile phone and vehicle; paid for the vehicle maintenance and fuel; was required to carry insurance, a driver license, and vehicle registration; and set his own hours. Claimant was able to accept or refuse assignments from Uber and allowed to drive for others. The Board found that Claimant worked "most days during his relationship with Uber" and was paid approximately $350 per week, which showed that his driving history with Uber was "frequent and prolonged, rather than

3

occasional and limited."[5] Board Adjudication (4/22/2016) at 4. "Considering the entire record," the Board concluded that Claimant is "self-employed and not just trying to earn some extra money on the side." *Id.* Claimant now petitions for this Court's review.[6]

On appeal,[7] Claimant argues that the Board erred. He maintains that he is not an "independently established commercial driver," emphasizing that his position with Separating Employer was in the behavioral health field. Claimant's Brief at 31. Claimant argues that the record is devoid of evidence that he "took any steps to hold himself out as a commercial driver or prepare for a commercial driving business." *Id.* For the following reasons, this Court agrees.

At the outset, we note that the Law was enacted to provide a safety net for persons who become unemployed "through no fault of their own." Section 3 of the Law, 43 P.S. §752. Unemployment compensation benefits are available to employees, but not to business owners, such as a sole proprietor, because the Law "is not a vehicle to be used to compensate persons who suffered from a failed business venture." *Owoc*, 809 A.2d at 443. Section 402 of the Law, which lists

---

[5] The Department does not contend that Claimant's work as an Uber driver rendered him not available for suitable work. Section 401(d) of the Law states that "[c]ompensation shall be payable to any employe who is or becomes unemployed and who … (d) Is able to work and available for suitable work…." 43 P.S. §801(d). The record shows that Claimant set his schedule and usually chose to accept driving requests in the evenings or late at night. Certified Record (C.R.), Item 7, Claimant Exhibit 4, 5, 6; C.R., Item 2, Claimant Employment Status Questionnaire.

[6] Our scope of review is to determine whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial competent evidence. *Seton Company v. Unemployment Compensation Board of Review*, 663 A.2d 296, 298 n.2 (Pa. Cmwlth. 1995). In unemployment compensation proceedings, the Board is the ultimate fact finder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses. *Owoc v. Unemployment Compensation Board of Review*, 809 A.2d 441, 443 (Pa. Cmwlth. 2002). Findings made by the Board are conclusive and binding on appeal if the record, examined as a whole, contains substantial evidence to support the findings. *Id.*

[7] Uber has intervened in this appeal. Neither the Board nor Separating Employer has participated.

4

multiple grounds by which an employee can be found ineligible for unemployment compensation, states in relevant part, as follows:

An employe shall be ineligible for compensation for any week -

* * *

(h)  In which he is engaged in self-employment[.]

43 P.S. §802(h).

The Law does not define "self-employment."  However, Section 4(*l*)(2)(B) of the Law defines "employment" as:

Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the [Department] that--(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. §753(*l*)(2)(B).  Courts refer to Section 4(*l*)(2)(B) to construe ineligibility under Section 402 of the Law.  Stated otherwise, we use the two-prong test to determine whether an applicant for unemployment benefits was an employee or independent contractor at the time of separation from employment.  The separating employer who asserts that the claimant is ineligible for benefits by reason of "self-employment" bears the burden of proving that the claimant's relationship with the separating employer was that of an independent contractor, not an employee. *Pasour v. Unemployment Compensation Board of Review*, 54 A.3d 134, 137 (Pa. Cmwlth. 2012).  It is necessary for the separating employer to prove both of the elements of Section 4(*l*)(2)(B) to rebut the presumption that one who performs services for wages

5

is an employee. *Minelli v. Unemployment Compensation Board of Review*, 39 A.3d 593, 596 (Pa. Cmwlth. 2012).

A claimant who is entitled to unemployment compensation from his separating employer may lose his compensation if he takes a positive step toward establishing an independent business. For example, in *Buchanan v. Unemployment Compensation Board of Review*, 581 A.2d 1005 (Pa. Cmwlth. 1990), the claimant lost his full-time employment as an assistant finance manager and began collecting unemployment compensation benefits. Thereafter, the claimant began selling jewelry at a weekly flea market. In reversing the Board's denial of benefits, this Court explained:

> *If one undertakes an activity in an entrepreneurial spirit with all intentions of starting a new business, trade, profession or occupation, he becomes a self-employed businessman.* If subsequently his business fails or proves to be unprofitable he does not have the option of falling back upon unemployment compensation benefits because the Law was not enacted to compensate individuals who fail in their business ventures and become unemployed businessmen …. The Law is clearly not insurance for individual business undertakings.

*Id*. at 1008 (emphasis added). Despite the fact that the claimant in *Buchanan* had purchased tools and spools of chain and rented a booth at the flea market, this Court concluded that he did not take "a positive step" toward establishing a business. *Id.* at 1009.

In so holding, this Court distinguished the holding in *Buchanan* from our previous decisions in *Leary v. Unemployment Compensation Board of Review*, 322 A.2d 749 (Pa. Cmwlth. 1974) (laid-off claimant formed a corporation for construction business and elected himself president); and *Balmer v. Unemployment Compensation Board of Review*, 368 A.2d 1349 (Pa. Cmwlth. 1977) (claimant, after

6

separation from employment, established elevator servicing business by providing capital for office equipment, advertising, and insurance). In contrast to *Leary* and *Balmer*, the claimant in *Buchanan* did not form a business entity for selling jewelry; did not advertise or list his phone number for the alleged business; and did not obtain insurance for his activity. His actions supported his claim that he had no intent to sell jewelry on a permanent basis but, rather, to make extra money on the side. *Buchanan*, 581 A.2d at 1009.

Similarly, in *Teets v. Unemployment Compensation Board of Review*, 615 A.2d 987 (Pa. Cmwlth. 1992), this Court held that a claimant who participated in a sales program with a skin care company after she was terminated from her full-time job as an account executive did not become ineligible by reason of self-employment under Section 402(h) of the Law. There, the claimant signed a distributor agreement, invested $250 in a sales kit and made efforts to enlist others in the sales program. We concluded that her actions constituted a "sideline activity." *Id*. at 990. Stated otherwise, because the Department failed to present any evidence on the time and effort she put into the project, it did not meet its burden of proving that the claimant intended to start a new business or occupation. *Id*. (analogizing *Buchanan*, 581 A.2d at 1009).

In the case *sub judice*, the Board concluded that Claimant was self-employed under his agreement with Uber and, thus, disqualified from receiving unemployment benefits under Section 402(h) of the Law. Using the two-part test in Section 4(*l*)(2)(B) of the Law, the Board focused on Claimant's relationship with Uber and the degree of dependence between the two. The Board found that Claimant was not connected to Uber in a subordinate manner or dependent upon Uber's

7

transportation services; rather, he could refuse assignments and was permitted to provide similar services for other entities. This analysis misses the mark.

The issue here is the same one before the Court in *Buchanan* and *Teets*, which is whether Claimant, by driving for Uber after losing his position in the behavioral health field, lost his eligibility for unemployment compensation benefits by becoming self-employed. Applying the two-part test in Section 4(*l*)(2)(B) of the Law in this context, as the Board did here, frames the analysis as "an either/or situation, *i.e.*, whether [Claimant] is either self-employed or is an employee of [Uber]." *Training Associates*, 101 A.3d at 1232. However, Uber is not the separating employer named in Claimant's benefit claim; Claimant's employment relationship with Uber, therefore, is not an issue for this Court to consider.[8]

Claimants who are receiving unemployment compensation benefits after separating from employment often engage in temporary assignments to supplement their income or to assist them in finding a full-time employer. These assignments do not render a claimant ineligible for unemployment benefits. However, earnings must be reported and will reduce the amount of a claimant's weekly benefit where the remuneration exceeds "his partial benefit credit." Section 404 of the Law, 43 P.S. §804(d)(1).

This Court has observed that claimants undertaking such assignments are not self-employed for unemployment compensation purposes. *See, e.g.*, *Minelli*, 39 A.3d 593. Further, claimants "should be commended for their effort to again become gainfully employed in a permanent, full-time position." *Training Associates*, 101 A.3d at 1232. In *Minelli*, this Court held that a claimant who has

---

[8] Although Uber has intervened in this appeal, its intervention does not change the issue before this Court.

8

been receiving benefits does not become disqualified because the claimant accepted work on an as-needed basis. *Minelli*, 39 A.3d at 597-98. We stated, in *Silver v. Unemployment Compensation Board of Review*, 34 A.3d 893 (Pa. Cmwlth. 2011), that "the fact that an unemployed person agrees to accept, and thereafter does accept, an occasional offer of work is simply not enough to demonstrate that said individual is customarily engaged in an independently established trade, occupation, profession or business." *Id*. at 898. Short-term work, including self-employment, in which a claimant engages after losing his job, does not render the claimant ineligible for unemployment compensation benefits under Section 402(h) of the Law.[9]

---

[9] Our precedent holds that under Section 402(h) a claimant engaged in self-employment while working for his separating employer can continue this sideline work after separation and still be eligible for benefits. *See LaChance v. Unemployment Compensation Board of Review*, 987 A.2d 167, 171 (Pa. Cmwlth. 2009) (citing *Moshos v. Unemployment Compensation Board of Review*, 466 A.2d 258, 259 (Pa. Cmwlth. 1983)). However, where the claimant makes a "substantial change" to his sideline activity and turns it into a full-time business, he may become ineligible for unemployment benefits. *Id.* This proviso in Section 402(h) of the Law is not applicable here because Claimant did not enter into the Agreement with Uber until after he lost his job with Separating Employer.

> Section 402(h) of the Law states:
>
> An employe shall be ineligible for compensation for any week-
>
> * * *
>
> (h)  In which he is engaged in self-employment: *Provided, however, That an employe who is able and available for full-time work shall be deemed not engaged in self-employment by reason of continued participation without substantial change during a period of unemployment in any activity* including farming operations undertaken while customarily employed by an employer in full-time work whether or not such work is in "employment" as defined in this act and continued subsequent to separation from such work when such activity is not engaged in as a primary source of livelihood ….

43 P.S. §802(h) (emphasis added). The central directive in Section 402(h) is that the employee collecting unemployment compensation must be available for full-time work notwithstanding "continued participation … during a period of unemployment in any activity…." *Id.*

Accordingly, whether the claimant performs this work as an employee or independent contractor is not a relevant inquiry.

For these reasons, we hold that the Board erred by framing the analysis as an "either/or situation" under Section 4(*l*)(2)(B) of the Law. As in *Buchanan* and *Teets*, the question here is whether Claimant took a positive step to embark on an independent trade or business, thereby disqualifying himself for benefits. The Department did not offer any evidence in that regard. *See Training Associates*, 101 A.3d at 1234 ("[w]here the Department has initiated the proceeding that resulted in a suspension of [unemployment] benefits because of self-employment, it carries the burden[.]"). Concluding Claimant was self-employed, the Board found that he earned approximately $350 per week from driving for Uber; used his own mobile phone and vehicle; paid for vehicle maintenance and fuel; was required to carry insurance, a driver license, and vehicle registration; and set his own hours. Uber permitted Claimant to drive for other ridesharing entities, and Claimant was able to accept or refuse assignments. These findings, which focused solely on Claimant's relationship with Uber, do not reflect "a positive step" toward establishment of an independent business. *Buchanan*, 581 A.2d at 1008. The Department presented no evidence to show the "level of time and effort" Claimant put into his alleged "business." *Teets*, 615 A.2d at 990. Claimant did not have business cards or advertise his driving services independent of Uber. Board Adjudication at 2; Finding

---

There is little question that Claimant "is able and available for full-time work," and the Department does not claim otherwise. The Board found that Claimant worked "most days." Board Adjudication, (4/22/2016), at 4. The certified record shows that Claimant drove for Uber at different times of the day, often in the evenings or late at night. C.R., Item 7, Claimant Exhibit 4, 5, 6. For example, on August 1, 2015, Claimant did trips from 12:13 a.m. to 3:05 a.m. and later that day from 4:21 p.m. to 7:54 p.m. *Id.*, Claimant Exhibit 4. Claimant simply notifies Uber electronically whenever he wants to make himself available to provide rides.

of Fact No. 15. Simply, his actions did not reflect "an entrepreneurial spirit" or "intentions of starting a new business [or] trade." *Buchanan*, 581 A.2d at 1008.

For the foregoing reasons, we conclude that the Board erred in determining that Claimant was disqualified for benefits under Section 402(h) of the Law. Accordingly, we reverse the Board's adjudication and remand for further proceedings before the Referee to calculate the unemployment benefits owed to Claimant, taking into account any offset for his earnings from Uber.[10]

_____
MARY HANNAH LEAVITT, President Judge

---

[10] The Board found Claimant "earned" approximately $350 per week, but the record shows only what he was paid. To know what he "earned" would require information about his expenses, which is not of record. Section 404(d)(1) of the Law authorizes a reduction to an employee's "weekly benefit rate" that exceeds his "partial benefit credit." 43 P.S. §804(d)(1).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donald Lowman,              :
         Petitioner       :
                            :
        v.              :     No. 686 C.D. 2016
                            :
Unemployment Compensation Board   :
of Review,                     :
        Respondent     :

# **O R D E R**

AND NOW, this 24th day of January, 2018, the order of the Unemployment Compensation Board of Review dated April 22, 2016, in the above-captioned matter is hereby REVERSED. The case is REMANDED to the Board with specific instructions to further REMAND to the Referee for further proceedings consistent with this opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donald Lowman,                          :
            Petitioner                  :
                                        :   No.  686 C.D. 2016
            v.                          :
                                        :   Argued:  May 3, 2017
Unemployment Compensation               :
Board of Review,                        :
            Respondent                  :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


CONCURRING & DISSENTING
OPINION BY JUDGE McCULLOUGH              FILED:  January 24, 2018


        Although I concur in the result reached by the thoughtful Majority, I must respectfully depart from its reasoning and application of precedent in unemployment compensation law.  Based on this record, we are compelled to apply the standard test as developed and endorsed by our Supreme Court and more fully discussed herein.

        Here, Donald Lowman (Claimant) separated from his employer in the behavioral health field, Resources for Human Development, and filed a claim for unemployment compensation benefits.  Before the local service center issued a determination, Claimant signed a "Software License and Online Service Agreement" (Agreement).  In this Agreement, Uber granted Claimant a "non-transferrable license

to install and use the [Uber] App on [his smartphone] solely for the purpose of providing Transportation Services." (Agreement, §2.62.) In exchange, Claimant agreed to pay Uber "a service fee on a per . . . transaction basis calculated as a percentage of the Fare . . . as provided or otherwise made available by [Uber] from time to time . . . ." (Agreement, §4.4.) Claimant began providing driving services through/for Uber on July 1, 2015, and continued to do so up until and including October 28, 2015, the date of the hearing in this matter.

The Unemployment Compensation Board of Review (Board) determined that Claimant was disqualified from receiving benefits because his stint with Uber constituted "self-employment." Applying the traditional test in *Danielle Viktor, Ltd. v. Department of Labor and Industry, Bureau of Employer Tax Operations*, 892 A.2d 781 (Pa. 2006), the Board found that Claimant was "customarily engaged in an independently established . . . business" under the second prong of section 4(*l*)(2)(B) of the Unemployment Compensation Law (Law).[1] In *Danielle Viktor*, our Supreme Court determined whether individuals who drove limousines for six limousine companies were self-employed, and the court did so by focusing on the relationship between the two to decide if the drivers provided their services "independent" of the limousine companies. Although *Danielle Viktor* presents a factual situation (limousine drivers) that is remarkably analogous to this case (an Uber driver), the Majority concludes that the Board's analytical model "misses the mark," (Maj. slip op. at 7), and proceeds to reconstruct a brand new legal framework to resolve this case.

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §753(*l*)(2)(B).

## The Majority's Test

For its underlying premise, the Majority holds that the Board "erred by framing the analysis as an either/or situation." (Maj. slip op. at 9). However, the Board did no such thing. Instead, applying the analysis we said was appropriate in these types of proceedings in *Training Associates Corp. v. Unemployment Compensation Board of Review*, 101 A.3d 1225 (Pa. Cmwlth. 2014), the Board determined that Claimant was self-employed through his work with Uber, expressly finding that the relationship between Claimant and Uber "was ongoing," and, thus, "Claimant's separation from [Uber] was not relevant to the Board's determination." *Silver v. Unemployment Compensation Board of Review*, 34 A.3d 893, 899 (Pa. Cmwlth. 2011); *see Training Associates*, 101 A.3d at 1233-34. Because "the Board's opinion only determined that Claimant was . . . disqualified from [receiving] benefits based on [his] previous separation from [Resources for Human Development]" and "there was no finding that Claimant was an employee of [Uber] or that [Uber] was Claimant's employer," there is no either/or problem in this case. *Training Associates Corp.*, 101 A.3d at 1233-34.

According to the Majority, the Board created "an either/or situation" by "[a]pplying the two-part test in Section 4(*l*)(2)(B)" to Claimant's particular situation. (Maj. slip op. at 8.) However, as this Court clarified in *Training Associates*, "[a]lthough the analysis in this proceeding should not be framed as an either/or situation," there must be a "mechanism to determine, in the first instance, whether [Claimant] is engaged in self-employment." *Id.* at 1233. We explained that "because [the claimant] received wages from [the putative employer] for services performed," the putative employer "must be included in the proceedings, albeit not necessarily as a party, in order for all of the evidence to be before the decision

maker." *Id.* at 1234. Importantly, this Court in *Training Associates* confirmed that, "in examining whether a claimant is self-employed, the entity that has firsthand evidence of whether the claimant was engaged in self-employment must necessarily be initially named as a new 'separating employer' in order for that entity to have notice and an opportunity to present such evidence." *Id.* It is for this very reason that Uber participated in the proceedings and filed a brief in this case, as did the putative employer in *Training Associates*.

Our case law has made it clear that "the first element of Section 4(*l*)(2)(B)" and the "second element of Section 4(*l*)(2)(B)," *i.e.*, "both of these showings," must be established in order to render a claimant ineligible for benefits, when the claimant is working after he has received, or is eligible to receive, benefits from a prior separating employer. *Minelli v. Unemployment Compensation Board of Review*, 39 A.3d 593, 596-97 (Pa. Cmwlth. 2012) (en banc). Indeed, as this Court has routinely held, the two-prong test of section 4(*l*)(2)(B) is the same regardless of whether it is an "independent contractor" case involving the separating employer, or a "self-employment" case involving work undertaken with a new entity following separation from an employer. *See, e.g., Silver*, 34 A.3d at 896; *Venango Newspapers v. Unemployment Compensation Board of Review*, 631 A.2d 1384, 1387 (Pa. Cmwlth. 1993); *Buchanan v. Unemployment Compensation Board of Review*, 581 A.2d 1005, 1007-08 (Pa. Cmwlth. 1990); *Laswick v. Unemployment Compensation Board of Review*, 310 A.2d 705, 709 (Pa. Cmwlth. 1973). The Majority's decision has now muddied these waters.

The Majority concludes that the Board erred when it "focused on Claimant's relationship with Uber and the degree of dependence between the two," (slip op. at 7), stating that the relationship "is not an issue for this Court to consider,"

*id.* at 8. But of course it is. Claimant is not performing his activities in a vacuum. To the contrary, Uber "has firsthand evidence of whether [Claimant] was engaged in self-employment," and "it is critical that all of the facts and evidence regarding the relationship between [Claimant] and [Uber] be presented." *Training Associates*, 101 A.3d at 1234. Regardless of the Board's or this Court's conclusion as to whether Claimant was customarily engaged in an independently established business, Uber will suffer no adverse legal consequences from the determination. *See id.*

Moreover, this is not a case where Claimant began working on the side, all on his own, or in a similar fashion to the claimants in the cases upon which the Majority relies.[2] Nonetheless, after subtracting Uber from the picture and viewing Claimant's activities as independent from any putative employer, the Majority adopts a new, "side-line activity" test, (Maj. slip op. at 9), which apparently is a hybrid of a "positive step" inquiry, *see id.* at 5-7; and a "customarily engaged" assessment, *see* slip op. at 8-9.

The Majority looks at how many "positive steps" Claimant undertook toward establishing a business (*i.e.*, being a driver for hire) that the law plainly says he cannot establish. It has for a long time been illegal – and continues to be illegal – to transport passengers for compensation in Pennsylvania without a taxicab or limousine license. *See Commonwealth v. Babb*, 70 A.2d 660, 662-63 (Pa. Super. 1950). There is no evidence that Claimant has either one of these licenses, and section 1.2 of Act 164 of 2016[3] prohibits an Uber driver from soliciting "potential

---

[2] In *Teets v. Unemployment Compensation Board of Review*, 615 A.2d 987 (Pa. Cmwlth. 1992), the claimant signed a distributor agreement, purchased a sales kit for skin care products, and sold those products. In *Buchanan*, the claimant bought spools of gold chain to make necklaces and bracelets for sale at a weekly flea market and spent one entire week selling the items.

[3] Act of November 4, 2016, P.L. 1222, No. 164.

passengers" or accepting "a street hail or telephone call for transportation of a person in a motor vehicle." 53 Pa.C.S. §57A13(b)(1), (3). True, the positive step test is useful in cases where a claimant embarks to start his own business, and/or is not working for an entity or putative employer, focusing on the extent to which, or how far along, the claimant has "established" the business and has become "self-employed."[4] However, it is not the most suitable test in this case where Claimant has completed all the steps or acts necessary to work for Uber, has worked through Uber for four months, and could not be a driver for hire absent his relationship with Uber.

The Majority also appears to intermingle case law regarding the "customarily engaged" element, (slip op. at 8-9), which holds that, in order to be disqualified from receiving benefits, the amount or duration of a claimant's work must be routine and regular. While an "occasional offer of a limited amount of work over . . . a short time period" does not suffice, this test does not apply where, as here, a claimant is "clearly engaged in ongoing business activities rather than an isolated or sporadic job(s)." *Minelli*, 39 A.3d at 598.[5]

Nonetheless, the Majority posits that Claimant was "engaged in short-term" work that is "sideline in nature," or a "sideline activity," (slip op. at 9),

---

[4] *See e.g., Buchanan v. Unemployment Compensation Board of Review*, 581 A.2d 1005, 1007-08 (Pa. Cmwlth. 1990) (and cases cited and discussed therein); *Salamak v. Unemployment Compensation Board of Review*, 497 A.2d 951, 954 (Pa. Cmwlth. 1985); *Roberts v. Unemployment Compensation Board of Review*, 422 A.2d 911, 912 (Pa. Cmwlth. 1980); *Leary v. Unemployment Compensation Board of Review*, 322 A.2d 749, 750 (Pa. Cmwlth. 1974) (en banc); *see also Minelli*, 39 A.3d at 596-97; *Silver*, 34 A.3d at 894-95.

[5] In *Silver*, the claimant performed three hours of work over a three-month period. In *Minelli*, the claimant worked a total of twenty-two hours in a three-day period.

asserting that there was "no evidence to show the 'level of time and effort' Claimant put into his alleged 'business,'" *id.* at 10. However, the record and the Board's findings, which are supported by substantial evidence, prove otherwise. Specifically, the Board found that Claimant **worked most days** during his four-month relationship with Uber, earning approximately $350.00 per week; his driving history with Uber was "**frequent and prolonged, rather than occasional and limited**;" and Claimant was **not working on an as-needed basis** because he could turn on the Uber App and work during any time he desired. (Board's decision at 3-4) (emphasis added). To the extent the Majority concludes that Claimant did not possess "an entrepreneurial spirit or [the] intentions of starting a new business," (slip op. at 10), the **Board found that there was no evidence upon which it could conclude that Claimant was "just trying to earn some extra money on the side" or that "he only drives for Uber to earn part-time income as he searches for re-employment in his career field**." (Board's decision at 4) (emphasis added). Hence, it is unclear where the Majority finds its evidence of Claimant's intent or "spirit." Certainly, Claimant never offered any testimony to this effect. *Id.*

Here, the facts and law dictate that Claimant could not legally operate as a driver for hire on his own but only under the rubric of Uber. His work through Uber was consistent and prolonged. Hence, I believe the Board properly applied the Supreme Court's three-part test in *Danielle Viktor* to decide whether Claimant was operating an "independently established" business. However, I would conclude that the Board erred in determining that Claimant was conducting a business "independent" of Uber.

**The *Danielle Viktor* test**

The three factors that comprise the Supreme Court's test in *Danielle Viktor* are: (1) whether the individual depended on the existence of the presumed employer for ongoing work; (2) whether the individual is able to work for more than one entity; and (3) whether the individual was hired on a job-to-job basis and could refuse any assignment. 892 A.2d at 797-98.

**Whether the individual depended on the existence of the presumed employer for ongoing work**

Our Supreme Court has held "that one cannot be 'customarily engaged in an independently established . . . business' where 'he is dependent upon another for the continuance of his employment.'" *Danielle Viktor*, 892 A.2d at 798 (quoting *Commonwealth v. Hecker & Co.*, 185 A.2d 549, 553 (Pa. 1962)). Inherent within the phrase "independently established" is the requirement that a claimant be involved in an enterprise that exists separate and apart from the relationship with the particular, purported employer, namely one that will survive termination of that relationship.

Here, the Uber App undoubtedly creates and supplies the indispensable business that is needed for Uber to operate. *See Executive Transportation Co., Inc. v. Pennsylvania Public Utility Commission*, 138 A.3d 145, 151 (Pa. Cmwlth. 2016) (en banc). Claimant can only provide rides when the offers are submitted through the Uber App, and this is the sole means by which Claimant connects, meets, or interfaces with a passenger. The Board found that "[Claimant] did not have his own business cards or advertise his driving services independent of Uber." Board's Finding of Fact (F.F.) at No. 15; *cf. Danielle Viktor*, 892 A.2d at 785, 787-88 (stating that the limousine drivers could "obtain clients," hand out "business cards," and

"advertise their services using their own letterhead"). And for good reason. Claimant cannot lawfully promote a business that Pennsylvania statutes and regulations mandate that he cannot form or conduct independently on his own. As such, I cannot say that, minus Uber's assistance, Claimant "was capable of performing the activities in question for anyone who wished to avail themselves of the services ." *Venango Newspapers*, 631 A.2d at 1388; *accord, e.g., Kurbatov v. Department of Labor and Industry, Office of Unemployment Compensation Tax Services*, 29 A.3d 66, 70 (Pa. Cmwlth. 2011); *cf. Danielle Viktor*, 892 A.2d at 796 n.14 (pointing out that the limousine drivers, who were licensed to drive a limousine, "were not subject to a statutory prohibition regarding their driving services.").

The dependent nature of the working relationship between Claimant and Uber is further reflected by the fact that Claimant is legally required to visibly display the Uber decal on his personal vehicle when working as a transportation network driver. Board's F.F. at No. 6; *see* section 1.2 of the Act, 53 Pa.C.S. §57A10(a). Unable to build his own client base, Claimant could not rely on his own unique characteristics and/or work ethic, but instead was "dependent upon both the good will of [Uber] and its services . . . to obtain customers." *Hecker*, 185 A.2d at 553.

With regard to wages, the passengers pay Uber through an account associated with the Uber App and, after Uber takes it share, it pays the drivers. Agreement, §4.4; Claimant's Ex. 2; N.T. at 11. The Board found that Uber unilaterally determined Claimant's compensation rate, and the Agreement does not permit Claimant to independently negotiate with or propose a fare to a passenger that exceeds the price devised by Uber. *See* Board's F.F. at No. 11; Board's Decision at 3; Agreement, §§4.1, 4.2, 4.4. The Agreement also vests Uber with the authority

to inspect all instances of transportation services and to condition payment to the drivers upon its approval. *See* Agreement, §§2.5.2, 4.4; *cf. Danielle Viktor*, 892 A.2d at 796 n.14 (highlighting the fact that the limousine drivers "did not require approval from [the purported employers] regarding their job performance"). Finally, the Agreement bars Uber drivers from delegating or subcontracting their assignments to another individual, which is something self-employers and independent contractors are naturally and typically able to do. *See* Agreement, §§2.62, 5.2; *cf. Danielle Viktor*, 892 A.2d at 797 (finding it weighty that a limousine driver could "substitute other workers of his or her choice when he or she chose not to complete an assignment.").

The record and applicable law demonstrate that Claimant depended on Uber for the existence and operation of transportation network services. The Department has failed to prove to the contrary. Accordingly, I would conclude that the Department has not met its burden to show that Claimant was not dependent upon Uber for work.

**Whether the individual was hired on a job-to-job basis and could refuse any assignment**

In *Danielle Viktor*, the fact that the limousine drivers could refuse an assignment took on legal significance in the context where there could be no adverse consequences for refusals. *See Danielle Viktor*, 892 A.2d at 785 ("Drivers can accept or reject jobs without repercussions"); *id.* at 787 ("There are no ramifications for a Driver who refuses an assignment"); *id.* at 788 (reiterating that there "are no negative consequences attached to such refusals."). Considering the pertinent sections of the Agreement together, there clearly remains an issue as to whether Uber

has the power to terminate or otherwise discipline Claimant for refusing to accept a sufficient amount of passengers' requests for transportation services. *See* Agreement, §§2.4, 2.5.2, 3.1, 12.2.[6] While the record indicates that Claimant maintained acceptance rates at 90% and above, (Claimant's Ex. 7-8), the real issue is whether Uber has the ability to impose discipline for a driver's refusal to accept rides, not whether Uber has, in fact, imposed such discipline.[7] Therefore, on this record, I would conclude that the Department has failed to establish that Claimant could refuse assignments without consequence. *See also Glatfelter Barber Shop v. Unemployment Compensation Board of Review*, 957 A.2d 786, 793 (Pa. Cmwlth. 2008) (concluding that the presumption in favor of benefits was not overcome where the record was devoid of competent evidence as to "whether there would be any repercussions for such a refusal.").

---

[6] One provision of the Agreement states that Claimant has "the option, via the [Uber] App, to attempt to accept or to decline a [passenger's] request for Transportation Services." Agreement, §2.4. Nonetheless, in another section of the Agreement, Claimant "acknowledge[s] that [his] repeated failure to accept [passenger] requests for Transportation Services while [he is] logged in to the [Uber] App creates a negative experience for [consumer-passengers] of Uber's mobile application." Agreement, §2.5.2. Uber instructed the drivers that they must follow the terms and conditions of the Agreement and Uber's "standards" and "policies." *See* Agreement, §§3.1, 12.2. Specifically, section 3.1 provides: "You acknowledge and agree that [Uber] reserves the right, at any time in [Uber's] sole discretion, to deactivate or otherwise restrict you from accessing or using the [Uber] App . . . if you fail to meet the requirements set forth in this Agreement." Agreement, §3.1. Section 12.2 states: "[Uber] may terminate this Agreement or deactivate your Driver ID immediately, without notice, with respect to you in the event you no longer qualify, under applicable law or the standards and polices of [Uber] and its Affiliates, to provide Transportation Services or to operate the Vehicle, or as otherwise set forth in this Agreement." Agreement, §12.2.

[7] Holtzman-Conston testified that, "to the best of his knowledge," Uber does not terminate a driver's use of the Uber App if the driver's acceptance rate falls too low. (N.T. at 18-19.) This testimony, however, is not based on personal knowledge and is therefore insufficient to support a factual finding. *See Lopez-Carrasquillo v. Rubianes*, 230 F.3d 409, 414 (1st Cir. 2000); *see also Hughes v. Unemployment Compensation Board of Review*, 414 A.2d 757, 758-59 (Pa. Cmwlth. 1980).

**Whether the individual is able to work for more than one entity**

Claimant testified that, aside from the Uber App, he has no experience using an app to provide transportation services and stated that he never considered working with Lyft, Inc. (Lyft), a known competitor of Uber. N.T. at 39-40. Pursuant to this Court's case law, the fact that Claimant could, but did not, work elsewhere does not establish that he engaged in an independent business. *See Jia v. Unemployment Compensation Board of Review*, 55 A.3d 545, 549 (Pa. Cmwlth. 2012) (concluding that proof that "Claimant *could* work for others does not establish that he engaged in an independent business, and did work for others.") (emphasis in original). Moreover, there is an issue as to whether Claimant's "work schedule provided him with little time to offer his services elsewhere." *Glatfelter*, 957 A.2d at 792. The Board determined that Claimant "worked most days during his relationship with Uber" and that his "driving was frequent and prolonged," yet opined, without any supporting evidence, that "he could have easily expanded his services to earn additional income." (Board's decision at 3-5.) However, an examination of the record indicates that it is unclear whether Claimant, as a practical matter, was "capable" of providing driving transportation services to an entity other than Uber. *See* Claimant Exs. 3-6; *cf. Office v. Softrock Geological Services, Inc.*, 325 P.3d 560, 565 (Colo. 2014) (concluding that "the number of weekly hours the putative employee actually worked for the employer" and "whether the putative employee even sought other work in the field" are factors relevant in the matrix). Significantly, there is no evidence regarding the amount of time that Claimant was actually "on the road" or how long he drove with the Uber App on while waiting to be connected with a passenger. Without this evidence, it is indeterminable whether

Claimant could have realistically pursued work with Lyft or devoted more time utilizing the Uber App. Therefore, the Department has failed to prove that Claimant was capable of working for more than one entity.

**Conclusion**

For these reasons, I would conclude that the Department did not carry its burden of establishing that Claimant was engaged in an "independently established" business. To me, the instant case is clearly distinguishable from *Danielle Viktor*, in which our Supreme Court determined that limousine drivers were self-employed.[8] Unlike the nature of the evidence presented in *Danielle Viktor*, the

---

[8] In *Danielle Viktor*, the Supreme Court consolidated appeals from this Court and determined whether the limousine drivers (Drivers) of six different limousine companies (Companies) were employees for purposes of imposing unemployment compensation taxes. The facts in those cases established that all of the Drivers could have provided their services to other limousine companies, including each of the individual Companies, and that a notable number of the Drivers actually did. In essence, because the Drivers furnished their services to any limousine company they chose, on their own terms, and did not operate to promote the business of any one of the Companies, *see* 892 A.2d at 799, "the limousine companies . . . were their clients." *Id.* at 801.

Ultimately, the Supreme Court concluded that the Drivers were not employees of Companies. In doing so, the Supreme Court found that they were customarily engaged in their own independently established trade, summing up the basis for its holding as follows:

> Evidence of record showed that the business of Drivers was not subject to the control of [Companies], was not a business unit or other component of the business of [Companies], and was not connected in a subordinate manner to any of the [six] companies. [Companies] were clients of Drivers, but Drivers did not depend on [Companies] for their existence, operation, or efficiency. If any one of the [Companies] were to cease conducting business, or to decide not to contract with Drivers, Drivers would not be out of employment. Drivers were free to perform their services for any

Department's evidence here failed to show that Claimant did not depend on Uber for business; failed to prove that Claimant could refuse any assignment without consequence; and failed to establish that Claimant was able to work for more than one entity, whereas the evidence in *Danielle Vicktor* affirmatively demonstrated the opposite.

Hence, although I disagree with the reasoning that the Majority employs to resolve this case, I concur in its decision insofar as it reverses and remands to the Board to award Claimant benefits.

_____
PATRICIA A. McCULLOUGH, Judge

other limousine company and were not compelled to look to the existence of any one [of the Companies] for continuation of their ability to provide driving services.

*Id.* at 795.