**OSBORNE ASSOCIATES, INC., d/b/a Generations Salon Services, Petitioners**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 17, 2010.

Decided Aug. 13, 2010.

Thomas A. Schneider, Horsham, for petitioner.

Randall S. Brandes, Asst. Counsel and Gerard M. Mackarevich, Deputy Chief Counsel, Harrisburg, for respondent.

Thomas A. Blackburn, Sr. Counsel-in-Charge, Harrisburg, for amicus curiae, State Board of Cosmetology.

BEFORE: COHN JUBELIRER, Judge, and BROBSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Osborne Associates, Inc., d/b/a Generations Salon Services (Generations), petitions for review of the order of the Unemployment Compensation Board of Review (Board), which affirmed on other grounds the Unemployment Compensation Referee's (Referee) decision and order concluding that Barbara P. Levicke (Claimant) was not disqualified from receiving benefits under Section 402(h) of the Unemployment Compensation Law (Law).[1] Before this Court, Generations argues that the Board erred by interpreting the Act commonly referred to as the Cosmetology Law[2] to prohibit all independent contrac-

---

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(h). Section 402(h) of the Law provides that an individual is ineligible to receive unemployment compensation benefits for any week "in which he is engaged in self-employment." 43 P.S. § 802(h).

2. Act of May 3, 1933, P.L. 242, *as amended*, 63 P.S. §§ 507–527.

tor relationships within the cosmetology field and by relying on such interpretation to conclude that Claimant is not disqualified from receiving benefits under Section 402(h). Generations contends that the Board should have instead applied the independent contractor test factors and determined that Claimant was engaged in self-employment when she provided cosmetology services on behalf of Generations. For the reasons that follow, we vacate and remand.

## I. Facts and Procedural Posture

Claimant worked as a licensed cosmetologist for LA Hair. (Referee Hr'g Tr. at 6, 11, 13–15, February 19, 2009, R.R. at 32a, 37a, 39a–41a; Referee Hr'g Tr. at 30, July 20, 2009, R.R. at 157a.) Claimant applied for unemployment compensation benefits in November 2007, after LA Hair reduced her hours. (Referee Hr'g Tr. at 14–15, February 19, 2009, R.R. at 40a–41a.) While continuing to work part-time for LA Hair, Claimant also provided services on behalf of Generations on eight occasions between July 2008 and November 2008.[3,4] (Referee Hr'g Tr. at 5–6, 15–16, February 19, 2009, R.R. at 31a–32a, 41a–42a.) Generations supplies senior living facilities with licensed cosmetologists who provide hair care services to the residents of those facilities. (Referee Hr'g Tr. at 10, July 20, 2009, R.R. at 137a.) On the occasions that Claimant provided services for Generations, Claimant filled in for other cosmetologists employed by Generations when they were sick or on vacation. (Referee Hr'g Tr. at 7, February 19, 2009, R.R. at 33a; Referee Hr'g Tr. at 10, July 20, 2009, R.R. at 137a.) Claimant reported earnings from both LA Hair and Generations to the unemployment compensation authorities for the compensable weeks ending: September 27, 2008; October 4, 2008; October 11, 2008; October 18, 2008; October 25, 2008; November 1, 2008; November 8, 2008; November 15, 2008; and November 22, 2008. (Claim Record at 1, R.R. at 1a.)

On December 18, 2008, the Unemployment Compensation Service Center (Service Center) issued a determination concluding that, because Claimant was an employee of Generations, and not a self-employed, independent contractor, she was not disqualified from receiving benefits under Section 402(h) of the Law for any of the compensable weeks listed above. Generations appealed the Service Center's determination, contending that Claimant was not an employee of Generations but, rather, provided services on its behalf as a self-employed, independent contractor.

An evidentiary hearing was held before the Referee at which only Claimant appeared and testified. During the hearing, the Claimant provided testimony in response to the Referee's questions, which were based on the factors of the independent contractor test. Following the hearing, the Referee issued a decision and order affirming the Service Center's determination. The Referee, after

---

**3.** According to Generations, the specific dates on which Claimant provided services for Generations were: July 22, 2008; July 25, 2008; August 1, 2008; August 22, 2008; August 26, 2008; September 2, 2008; September 16, 2008; and November 13, 2008. (Referee Hr'g Tr. at 10–12, July 20, 2009, R.R. at 137a–39a; Ex. E-3, R.R. at 164a.) Although Claimant initially testified that she began working for Generations in August of 2008 (Referee Hr'g Tr. at 5, February 19, 2009, R.R. at 31a), she did not dispute the dates mentioned above when they were later introduced by Generations.

**4.** In 1997, Claimant worked for Generations, which previously operated under the name HeathCare HairServices, Inc. (Referee Hr'g Tr. at 10–11, February 19, 2009, R.R. at 36a–37a.)

applying the factors of the independent contractor test, concluded that an employer/employee relationship existed between Claimant and Generations and, therefore, that Claimant was not disqualified from receiving benefits under Section 402(h).

 Generations appealed the Referee's decision and order to the Board. The Board remanded the matter back to the Referee, who, acting as a hearing officer for the Board, conducted another hearing regarding Generations' nonappearance at the first hearing and the merits of Generations' appeal. Claimant and Generations' president, Marvin Weinstein, appeared and testified at the remand hearing.[5] During the remand hearing, Generations attempted to establish that Claimant was an independent contractor, and not an employee, based on the independent contractor test factors. Claimant, appearing pro se, asserted that she had contacted the State Board of Cosmetology (Cosmetology Board), which advised her that the Cosmetology Law prohibits cosmetologists from working as independent contractors. Following the remand hearing, the Board issued its decision and order in which it made the following findings of fact:

1. The claimant was last employed as a hairdresser by Generation[s] ... from August 10, 2008, and her last day of work was November 13, 2008.

2. Generation[s] ... provides hair care services for retirement facilities.

3. On September 23, [1]997, the claimant had entered into an independent contractor agreement with the employer to provide services at the Immaculate Mary Nursing Home.

4. The employer no longer does business with the Immaculate Mary Nursing Home.

5. The claimant was hired by the employer to provide hairdressing services for the employer when one of its hairdressers was unavailable.

6. When the claimant would fill in her pay depended on the agreement between the employer and the client.

7. The employer set the prices that the customers were charged.

8. Most of the supplies and tools the claimant used were provided for her.

9. The claimant was free to work for other salons.

10. The claimant could refuse assignments or alter her hours.

11. The claimant was presented with a 1099 tax form for her services rendered in the year of 2008.

(Board Decision, Findings of Fact (FOF) ¶¶ 1–11, R.R. at 166a–67a.) After setting forth Section 402(h) of the Law and the independent contractor test of Section 4($l$)(2)(B) of the Law, 43 P.S. § 753($l$)(2)(B), the Board acknowledged that "[t]he Pennsylvania courts have set out various factors to be considered in determining if a claimant is an indepen-

---

**5.** Mr. Weinstein testified that: he did not appear at the first hearing because he was working at Generations' Florida office at the time; he had contacted the Referee's office prior to the first hearing and requested to participate by telephone, but his request was denied because the Referee thought he was on vacation; and he is the only person from Generations who is involved with this matter who could testify on Generations' behalf. (Referee Hr'g Tr. at 4–8, July 20, 2009, R.R. at 131a–35a.) Although the Board did not specifically mention this in its decision and order, it is apparent that the Board determined that the Referee erred in failing to allow Mr. Weinstein to participate in the first hearing by telephone.

dent contractor" and that "[t]he *Referee* considered these factors." (Board Decision at 3, R.R. at 168a (emphasis added).) However, the Board explained that the courts "have also held that where an individual is prohibited from acting independently, such as a Dental Hygienist, the claimant cannot be considered an independent contractor." (Board Decision at 3, R.R. at 168a.) The Board explained:

Here, the Board takes official notice that under Pennsylvania's Cosmetology Law, unless the claimant owns or runs the salon, she must work for a salon and cannot act as an independent contractor in the salon because "Booth Rental" is specifically prohibited in the [Cosmetology Law]. The Board notes that while the [Cosmetology Law] does allow for a licensed cosmetologist to provide treatments to persons in their residences by appointment, it still must be done through a salon. Therefore, the Cosmetology Law would prohibit the claimant from being an independent contractor under the circumstances of this case.

(Board Decision at 3, R.R. at 168a.) Accordingly, the Board, without applying the independent contractor test factors, concluded that Claimant was not disqualified from receiving benefits under Section 402(h) and Section 4(*l*)(2)(B) of the Law and affirmed the Referee's decision and order on other grounds. Generations now petitions this Court for review.[6]

## II. Discussion

■ Before this Court, Generations argues that the Board erred in concluding that Claimant was not disqualified from receiving benefits under Section 402(h).

Specifically, Generations contends that the Board erred in relying on the Cosmetology Law to determine whether Claimant was an employee or an independent contractor instead of applying the factors typically considered under the independent contractor test. Generations maintains that application of the independent contractor test factors would have revealed that Claimant was a self-employed, independent contractor, and not an employee of Generations. Moreover, Generations contends that the Board's interpretation of the Cosmetology Law as prohibiting every independent contractor relationship in the cosmetology field disregards the plain language of the statute, which only prohibits the rental of booth space within a salon. According to Generations, the present situation did not involve the rental of booth space but, rather, involved Claimant providing hair care services to residents at a senior living facility, which Claimant was permitted to do, under the Cosmetology Law, without being an employee of a cosmetology salon. Generations further contends that the Board's interpretation of the Cosmetology Law raises serious constitutional questions in that, under the Board's interpretation, the Cosmetology Law does not provide reasonable notice as to what conduct is prohibited, thus rendering the Cosmetology Law unconstitutionally vague.

The Board responds by arguing that, based on *Glen Mills Schools v. Unemployment Compensation Board of Review*, 665 A.2d 561 (Pa.Cmwlth.1995), it acted properly in looking to the Cosmetology Law to determine whether Claimant was an independent contractor. The Board further contends that several sections of the Cos-

---

**6.** This Court's "review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law or whether necessary findings of fact are supported by substantial evidence." *Beacon Flag Car Co. v. Unemployment Com-*

*pensation Board of Review*, 910 A.2d 103, 107 n. 9 (Pa.Cmwlth.2006). "Whether Claimant is an employee or an independent contractor is a determination of law subject to our review." *Id.*

metology Law and the Cosmetology Board's regulations, when read together, establish that independent contractor relationships are prohibited in the field of cosmetology. Specifically, the Board relies on Section 8.1 of the Cosmetology Law, added by Section 2 of the Act of October 18, 2000, P.L. 607, *as amended,* 63 P.S. § 514.1,[7] which prohibits the rental of booth space within a salon; Section 8 of the Cosmetology Law, 63 P.S. § 514,[8] which restricts the locations where a licensed cosmetologist may lawfully practice; and Sections 7.81,[9] 7.82,[10] and 7.83 [11] of the Cosmetology Board's regulations, which impose certain restrictions on practicing outside of a salon.[12] According to the Board, because Claimant was prohibit-

ed, as a matter of law, from providing services on behalf of Generations as an independent contractor, she could not have been engaged in self-employment under Section 402(h). Alternatively, the Board argues that if this Court determines that the Board erred in relying on the Cosmetology Law and the Cosmetology Board's regulations, instead of the independent contractor test factors, to determine Claimant's eligibility for benefits, the matter should be remanded for the Board to make additional factual findings and legal conclusions based on the independent contractor test factors, which is a different legal theory than the one that the Board previously considered and based its decision upon.

7. Section 8.1 provides that: "[t]he rental of booth space by an owner of a cosmetology salon, or the owner of a salon limited to esthetics, nail technology or natural hair braiding, to any holder of a license issued under this act is unlawful." 63 P.S. § 514.1. The term "booth space" is defined in Section 1 of the Cosmetology Law as "the area of a salon in which a licensed cosmetologist or a holder of a limited license provides to a client a service for which a license is required under this act." 63 P.S. § 507.

8. Section 8 provides that:
(a) Except as set forth in subsection (b), it shall be unlawful for any person:
(1) to practice cosmetology for pay in any place other than a licensed cosmetology salon or barber shop as defined in the act of June 19, 1931 (P.L. 589, No. 202), referred to as the Barbers' License Law; or
(2) to practice esthetics, nail technology or natural hair braiding for pay in any place other than a licensed cosmetology salon or a salon limited to esthetics, nail technology or natural hair braiding.
(b) A licensed cosmetologist or the holder of a limited license may furnish treatments to persons in their residences by appointment. 63 P.S. § 514.

9. Section 7.81 of the Cosmetology Board's regulations provides that: "[a] cosmetologist or holder of a limited license, with the permission of the employing salon, may render

by appointment cosmetology or limited license services to persons at their residences and to persons who are confined to institutions due to illness, imprisonment, old age or similar circumstances." 49 Pa.Code § 7.81.

10. Section 7.82 of the Cosmetology Board's regulations provides that: "[a] licensee who renders licensed services outside the salon shall maintain at the employment salon complete records for each service rendered outside the salon, including the date, time, place and fee charged. The record of outside services shall be considered part of the records of the salon." 49 Pa.Code § 7.82.

11. Section 7.83 of the Cosmetology Board's regulations provides that:
A salon through which appointments are made for the rendering of cosmetology or limited license services outside the salon shall be responsible for ensuring that the licensees are fully supplied and equipped when they perform services outside the salon and that all other requirements of this chapter are complied with. 49 Pa.Code § 7.83.

12. The Cosmetology Board, which filed an amicus curiae brief in this matter and also participated in oral argument, agrees with the Board's interpretation of the Cosmetology Law and the Cosmetology Board's regulations.

Pursuant to Section 402(h), an individual is ineligible to receive unemployment compensation benefits for any week "[i]n which he is engaged in self-employment." 43 P.S. § 802(h). The Law does not define the term "self-employment." However, the courts have relied on the definition of "employment" set forth in Section 4(*l*)(2)(B) of the Law, which states:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B). Section 4(*l*)(2)(B) "presumes that an individual is an employee, as opposed to an independent contractor." *Beacon Flag Car Co. v. Unemployment Compensation Board of Review*, 910 A.2d 103, 107 (Pa.Cmwlth.2006). However, this presumption may be overcome if the putative employer shows that the claimant: (1) "was free from control and direction in the performance of his service"; and (2) "as to such service, was customarily engaged in an independent trade[, occupation, profession] or business." *Id.* "Unless both of these showings are made, the presumption stands that one who performs services for wages is an employee." *Id.*

As to the first prong of the independent contractor test—whether a claimant was free from direction and control—the putative employer must show a lack of control "not only with regard to the work to be done, but also with regard to the manner of performing it." *Id.* at 108. In considering the question of control, the courts have considered a variety of factors, such as:

> whether there was a fixed rate of remuneration; whether taxes were deducted from the claimant's pay; whether the presumed employer supplied equipment and/or training; whether the presumed employer set the time and location for the work; whether the presumed employer had the right to monitor the claimant's work and review [her] performance; and the requirements and demands of the presumed employer.

*Resource Staffing, Inc. v. Unemployment Compensation Board of Review*, 961 A.2d 261, 264 (Pa.Cmwlth.2008). "No single factor is controlling ..., and, therefore, the ultimate conclusion must be based on the totality of the circumstances." *Id.*

As to the second prong of the independent contractor test—whether the claimant was engaged in an independently established trade, occupation, profession or business—the courts have generally considered: (1) whether the individual was "'capable of performing [his services] to anyone who wished to avail themselves of the services' and [was] not 'compelled ... to look to only a single employer for the continuation of such services'"; (2) whether the individual was "dependent on [the presumed employer] for employment"; and (3) whether the individual was "hired on a job-to-job basis and could refuse any assignment." *Viktor LTD. v. Department of Labor and Industry, Bureau of Employer Tax Operations*, 586 Pa. 196, 214–15, 892 A.2d 781, 792–93 (2006) (quoting *Venango Newspapers v. Unemployment Compensation Board of Review*, 158 Pa. Cmwlth. 379, 631 A.2d 1384, 1388 (1993)). Additionally, the Pennsylvania Supreme Court has made clear that an individual is not required "to own all of the assets of his or her business or to bear on his or her

own the full measure of financial risk of the enterprise" in order to be engaged in an independently established trade, occupation, profession, or business. *Id.* at 229, 892 A.2d at 801.

Here, instead of applying the independent contractor test factors described above, the Board interpreted the Cosmetology Law and the Cosmetology Board's regulations and, based on this interpretation, concluded that Claimant is prohibited as a matter of law from being an independent contractor. As support for its decision, the Board relies on *Glen Mills*, in which this Court concluded that the claimant's occupation as a dental hygienist precluded her, as a matter of law, from being self-employed. 665 A.2d at 565. In reaching this conclusion, this Court, in *Glen Mills*, relied upon the former version of Section 2 of the Dental Law,[13] which provided:

> A "**Dental Hygienist**" is one who is legally licensed as such by the said dental council and examining board to perform those educational, preventive, and therapeutic services and procedures that licensed dental hygienists are educated to perform. Licensed dentists may assign to their employed dental hygienists intra-oral procedures which the hygienists have been educated to perform.... Such assignments *shall be under the supervision of a licensed dentist.* Such performance of intra-oral procedures by licensed dental hygienists *shall be in the office of a dentist or public or private institution such as schools, hospitals, orphanages, and sanitoria or State health cars* ....

*Id.* at 565 (quoting the former version of 63 P.S. § 121 (omissions and emphasis in original)). This Court explained that, based on this language, "a dental hygienist may not operate an independent business,

but must always work under the direct supervision of a dentist." *Id.* The Court went on to explain that:

> If a dental hygienist attempts to work independently, his or her license may be revoked. For example, in *Edwards v. State Dental Council and Examining Board*, 71 Pa.Cmwlth. 139, 454 A.2d 218 (1983), we rejected a dental hygienist's constitutional challenge to Section 2 of the Dental Law, and affirmed an order of the Dental Council revoking her license for performing services without being under the direct supervision of a dentist.

*Id.* Accordingly, the Court concluded in *Glen Mills* that "because [the c]laimant cannot be self-employed [as a dental hygienist] as a matter of law, ... she is not ineligible for benefits under Section 402(h) of the Law." *Id.*

The Board's reliance on *Glen Mills* is misplaced. Importantly, the section of the Dental Law at issue in *Glen Mills*, which, on its face, expressly required dental hygienists to work under the direct supervision of an employing dentist, had previously been interpreted and upheld as valid by this Court in the context of a licensing enforcement action. Thus, it was clear in *Glen Mills* that the Dental Law prohibited dental hygienists from working as independent contractors by expressly requiring them to work under the direct supervision of another, more qualified employing individual. However, here, unlike in *Glen Mills*, the Board is asking this Court to construe several sections of the Cosmetology Law and the Cosmetology Board's regulations together as prohibiting all independent contractor relationships within the field of cosmetology where none of those sections, by themselves, expressly prohibit independent contractors or expressly re-

---

**13.** Act of May 1, 1933, P.L. 216, *as amended*, 63 P.S. § 121.

quire licensed cosmetologists to work under someone else's direct supervision, and the exact meaning of those sections has yet to be determined by an appellate court in the context of a licensing enforcement action. It is not even clear here that the interpretation advanced by the Board, and joined in by the Cosmetology Board, has been adopted by the Cosmetology Board in a licensing enforcement action. Moreover, unlike in *Glen Mills*, where we were purely looking at a statutory provision in the Dental Law, here the Board is asking this Court to interpret the Cosmetology Law in conjunction with the Cosmetology Board's regulations, which raises a separate issue as to whether the proposed interpretation of those regulations would render such regulations inconsistent with the Cosmetology Law. Furthermore, while the parties have presented arguments as to how the Cosmetology Law and the Cosmetology Board's regulations should be interpreted, those arguments are framed in terms of determining the Claimant's eligibility for unemployment compensation benefits, and not necessarily as to what meaning the Cosmetology Law and the Cosmetology Board's regulations should have in the context for which they were created—licensing and regulation of the Cosmetology profession. Without the issues being properly briefed and argued in the context of a licensing enforcement action, it would be inappropriate for this Court to discern the true meaning of the sections of the Cosmetology Law and Cosmetology Board's regulations relied upon by the Board. Additionally, if this Court were to adopt the approach utilized by the Board in this case, unemployment compensation referees, who already have burdensome workloads and strict time constraints, could be forced to try to determine the meaning of statutory and regulatory provisions governing professions without any guidance from the courts.[14] Therefore, we believe that the

14. The following exchange from this case between Claimant and the Referee demonstrates the difficulty that referees would face in trying to determine the meaning and applicability of statutes and regulatory provisions governing other professions:

> R[eferee]: Okay. Do you wish to offer testimony on your own behalf here today? You're handing me something. I don't know what you're handing me.
> C[laimant]: Okay. This is the law, okay, cosmetology law, Act 99. This started in '06.
> R[eferee]: Okay.
> C[laimant]: And it's Section 8. 1, (inaudible) provided. The rental of a space by any owner or cosmetology salon, this, this takes in, this takes in everything, or the owner of a salon limited to, and then they go on to nail, hair care, and so forth, and braiding and so forth. Should [sic] any holder of a license issued under this Act is unlawful.
> R[eferee]: Okay. How does that relate to the case here today?
> C[laimant]: You cannot—you have to take out taxes to all cosmetologists.
> E[mployer's Lawyer]: For the record, I'm going to object to that extrapolation from

> . . .
> R[eferee]: Okay.
> . . . .
> C[laimant]: I called the Board of Cosmetology . . .
> R[eferee]: Hold on one minute, I'd like to review it.
> C[laimant]: Okay.
> R[eferee]: You're referring to Section 9, is that correct?
> C[laimant]: Section 8.1, 8.1.2009.
> R[eferee]: Section 8.1?
> C[laimant]: Mm-hmm.
> R[eferee]: And how do you feel that this would be applied to you?
> C[laimant]: Because the other two companies I work for, they told me that what Mr. Weinstein . . .
> E[mployer's Lawyer]: I'm going to object to that Your Honor.
> R[eferee]: And just, just state for the record the reason for [sic] objection.
> E[mployer's Lawyer]: It's hearsay, and they're not here.
> R[eferee]: Okay. Not only, not only that, but the fact that, again, you're referring to another . . .
> C[laimant]: Okay. All right. I called . . .

Board's reliance on *Glen Mills* is misplaced, and we decline to apply the analysis used in *Glen Mills* to this case.[15]

Rather, the proper analysis to be applied here is that which was used by this Court in *Glatfelter Barber Shop v. Unemployment Compensation Board of Review*, 957 A.2d 786 (Pa.Cmwlth.2008). In that case, this Court determined that a barber providing services in a barber shop was an employee, as opposed to an independent contractor, and was, therefore, not disqualified from receiving benefits under Section 402(h). *Id.* at 792. There, this Court acknowledged that Section 12(a) of the Barber License Law[16] requires all barber shops, other than single-barber shops and one-chair barber shops in senior citizen centers, to be operated "at all times ...

> R[eferee]: (inaudible)
> C[laimant]: I called the Board of Cosmetology and they ...
> E[mployer's Lawyer]: I'm going to object.
> R[eferee]: Well let her, let her finish the statement before you object.
> C[laimant]: And I was told by the Board of Cosmetology, and I explained everything to them, and they said it is in the law book, and that it's an overall, no matter who you work for or where you work, you are an employee. You are not allowed to be an independent contractor.
> R[eferee]: Do you have any evidence of that with you here today?
> C[laimant]: They told me that the law—if I took the book of law with me, that should cover everything. And I called them and I said it's only space rental. And she said that takes in everything, no matter where you work you cannot ...
> R[eferee]: Okay. Do you have any other evidence showing here, other than it being a booth rental being prohibited ...
> C[laimant]: Well, if, if you're working ...
> R[eferee]: Is there anywhere in this policy where it states that an employer must consider you an employee or take taxes out of your wages?
> C[laimant]: Well that's, that's what that's implying.
> R[eferee]: Okay. Where specifically does it tell me that?

under the immediate supervision of a manager-barber or a licensee designated in charge of the shop." *Id.* at 790 n. 10 (quoting 63 P.S. § 562(a)). Despite acknowledging Section 12(a), this Court did not attempt to determine whether Section 12(a) prohibited the claimant barber from working as an independent contractor in a barber shop as a matter of law. Instead, this Court applied the independent contractor test and, in doing so, merely considered Section 12(a) as one of numerous factors in determining whether the first prong of the independent contractor test—whether the claimant was free from direction and control—had been satisfied. *Id.* at 789–91. Specifically, the Court stated:

> C[laimant]: That you can't—have to have, you have to be employed. You cannot be—see if you run a booth, you're, you're a contractor, you're an independent contractor in that salon, and you're not allowed to be an independent contractor. You have to be, you have to be an employee under that law.
> R[eferee]: Okay. I'll note that for the record....

(Referee Hr'g Tr. at 24–26, July 20, 2009, R.R. at 151a–53a.)

15. We note that to the extent that *Glen Mills* may be applicable to other cases in the future, that case does not provide a basis for completely disregarding the independent contractor test. To the contrary, in *Glen Mills*, this Court acknowledged that "for a claimant to be self-employed, he or she must be free from control or direction over the performance of services and must be engaged in an independently established trade, occupation, profession or business." 665 A.2d at 565. Thus, in reaching the conclusion that we did in *Glen Mills*, this Court was simply relying on the former version of Section 2 of the Dental Law to determine whether the two prongs of the independent contractor test could be satisfied instead of considering the numerous factors typically involved in that analysis.

16. Act of June 19, 1931, P.L. 589, *as amended*, 63 P.S. § 562(a).

Here, the record and the Board's findings clearly support the conclusion that GBS controlled or had the authority to control Wamsley's day-to-day operations: 1) that GBS set the general barber shop hours of operation from 6:00 A.M. until 6:00 P.M. Tuesday through Friday and from 6:00 A.M. until 12:00 P.M. on Saturday; 2) that Wamsley was paid on a weekly basis; 3) that GBS set the general price for a haircut at $10.00; 4) that GBS provided all equipment and supplies to its barbers except razors and scissors; 5) that GBS provided its own business cards without the individual names of its barbers on it; 6) that GBS did not exhibit any of its barbers' names on the outside window; 7) that GBS required attendance at meetings and notice of vacations; 8) that GBS required Wamsley to execute an agreement that contained a non-compete clause; and 9) *that GBS was required to have a manager on the premises to supervise the work of Wamsley and other non-manager barbers pursuant to Section 12(a) of the Barber License Law* . . . . GBS failed to overcome its burden that Wamsley was free from its control and therefore self-employed.

*Id.* (footnotes and citation omitted) (emphasis added). In considering the second prong of the test—whether the claimant was engaged in an independently established trade, occupation, profession or business—this Court distinguished *Glatfelter* from *Viktor*, in which the Pennsylvania Supreme Court determined that the claimants in that case, who were limousine drivers, were independent contractors.[17] The Court explained:

Unlike in *Viktor*, the evidence established that the GBS barbers were not hired on a job-to[-]job basis but had a continuing work relationship. There was no evidence that Wamsley and the other barbers provided services from [sic] any other barber shop. In fact, Wamsley testified that he worked approximately fifty-four hours a week for GBS, and his work schedule provided him with little time to offer his services elsewhere. Also, GBS required Wamsley to sign a non-compete clause which prohibited the practice of his trade for two years within a ten mile radius of GBS.

Last although Kopp testified that each barber had the prerogative to refuse to cut a customer's hair, there was no evidence that Wamsley, Mollica, and Heiges actually exercised this alleged right much less whether there would be any repercussions for such a refusal. Again,

17. In *Viktor*, the only issue in dispute was the second prong of the independent contractor test—whether the claimants were engaged in an independently established trade, occupation, profession, or business. The Supreme Court determined that this prong was satisfied because: the drivers provided their services to the presumed employers on a job-to-job basis and could reject assignments; the drivers could perform their services for more than one entity, including competitors, with no adverse consequences; and the drivers' operation of their businesses and ability to perform the work was not dependent on the existence of the presumed employers. *Viktor*, 586 Pa. at 229–30, 892 A.2d at 801–02. Although the issue of control was not directly at issue, the Supreme Court noted the following facts establishing that the limousine drivers were free from control: the drivers were not required to complete an application or participate in an interview; the drivers were permitted to refuse clients and/or trips; the client, as opposed to the limousine company, determined the time, place, and distance of trips; the drivers could chose what route to take; the drivers could choose when to make stops; the drivers could extend services beyond the agreed rental; the limousine company did not provide training or require attendance at meetings; the limousine company did not supervise the drivers; and the limousine company did not supply a uniform or a handbook. *Id.* at 213, 892 A.2d at 791–92.

GBS failed to overcome the presumption that Wamsley was an employee or engaged in a service that was customarily an independent trade or business. *Glatfelter*, 957 A.2d at 792.

Based on *Glatfelter*, Section 8 of the Cosmetology Law, which restricts the places where a cosmetologist may lawfully practice, and Sections 7.81, 7.82, and 7.83 of the Cosmetology Board's regulations, which impose certain restrictions on practicing outside of a salon, could be relevant here in considering one of the factors relevant to the issue of control—whether the presumed employer had the right to review Claimant's work or monitor her performance. Moreover, Section 8.1 of the Cosmetology Law, which prohibits the rental of booth space within a salon, when construed on its face, would not appear to be relevant because Claimant was not working for Generations in a salon, but was instead providing services on behalf of Generations outside of a salon to residents at a senior living facility. Thus, consideration must be given to the other factors necessary to determine whether the two prongs of the independent contractor test have been satisfied.

Here, the Board freely acknowledges that it decided this case on the basis of a different legal theory and that it did not make all of the findings necessary to determine Claimant's eligibility for benefits based on the independent contractor test factors. The Board, thus, requests that this Court remand this matter back to the Board to make the necessary findings. We believe that the remand requested by the Board would be consistent with our precedent. *See Resource Staffing*, 961 A.2d at 265 (vacating the Board's order and remanding the matter for additional findings where the decision adopted by the Board did not make adequate findings necessary for applying the independent contractor test factors); *D.K. Abbey Marketing, Inc. v. Unemployment Compensation Board of Review*, 165 Pa.Cmwlth. 292, 645 A.2d 339, 341–42 (1994) (recognizing that this Court is not empowered with the duty to make factual findings where the findings made by the Board are inadequate and vacating the Board's order and remanding the matter for the Board to make specific findings to aid in applying the independent contractor test factors).

### III. Conclusion

Accordingly, for the reasons discussed above, we vacate the Board's order affirming on other grounds the Referee's decision and order concluding that Claimant is not disqualified from receiving benefits under Section 402(h) of the Law, and we remand this matter to the Board for the issuance of a new adjudication that addresses the independent contractor argument in light of the holding in this case.

### ORDER

**NOW,** August 13, 2010, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby **VACATED**, and this matter is **REMANDED** to the Board for the purpose of issuing a new adjudication that addresses the independent contractor argument in light of the holding in this case.

Jurisdiction relinquished.