# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Villager Realty of Bloomsburg, :
    Petitioner :
      : No.  805 C.D. 2018
    v. :
      : Argued:  April 9, 2019
Unemployment Compensation :
Board of Review, :
    Respondent

BEFORE: HONORABLE ROBERT SIMPSON, Judge
    HONORABLE PATRICIA A. McCULLOUGH, Judge
    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE McCULLOUGH        FILED:  June 4, 2019

    Villager Realty of Bloomsburg (Villager Realty) petitions for review of the May 2, 2018 order of the Unemployment Compensation Board of Review (Board) affirming a referee's decision that found Kerry M. Seely (Claimant) not disqualified from receiving unemployment compensation (UC) benefits pursuant to section 402(h) of the Unemployment Compensation Law (Law),[1] after determining that Claimant is not self-employed under the law.

## Facts and Procedural History

    Claimant was employed by Geisinger as an IT Analyst from April 2007, until June 2, 2017.  (Finding of Fact (F.F.) Nos. 1-2.)  Claimant filed an application for

---

[1] Section 402(h) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(h).  Section 402(h) provides that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which he is engaged in self-employment."  43 P.S. §802(h).

UC benefits based on her separation of employment from Geisinger. In 2016, her gross earnings from Geisinger were $68,000.00. (F.F. No. 3.)

In October 2016, while still working with Geisinger, Claimant entered into an Independent Contractor Agreement with Villager Realty to perform services as a real estate salesperson. (F.F. Nos. 4-5.) Claimant considered herself an independent contractor. (Reproduced Record (R.R.) at 67.)[2] After Claimant's employment with Geisinger ended, Claimant continued to work for Villager Realty. (R.R. at 69.) Claimant's compensation from Villager Realty was 100% commission, based on her sales, no taxes were withheld from her compensation, and she received a 1099 tax form at the end of the year. (F.F. No. 6; R.R. at 66.) The commission rate could be altered by Villager Realty's management. (F.F. No. 7; R.R. at 85.)

The agreement between Claimant and Villager Realty provided that Villager Realty owned Claimant's real estate listings. (F.F. No. 10; R.R. at 85.) The agreement also required Claimant to maintain membership in the local Board of Realtors, the Pennsylvania Association of Realtors, and the National Association of Realtors, at her own expense. (F.F. No. 8; R.R. at 82.) Claimant was permitted to work as many or as few hours as she wanted, and she was not closely supervised. (F.F. No. 11; R.R. at 65-67, 69.) When working as a real estate salesperson, Claimant used her own vehicle, computer, and cell phone, but could use Villager Realty's offices to conduct or perform her job duties. (F.F. No. 12; R.R. at 66, 69-70.) She also had the freedom to "call on people to get listings," "meet new clients to take them out and show

---

[2] While Rule 2173 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2173, directs that the page numbers in the reproduced record be followed by the letter "a," here, the page numbers in the reproduced record do not contain such a designation.

them properties," "make her own appointments," and did not have to work in Villager Realty's office. (R.R. at 66-67.)[3]

Pursuant to the agreement, Claimant was only permitted to perform real estate services through Villager Realty. (F.F. No. 9.) Under Pennsylvania law, Claimant was required to maintain her real estate license with only one real estate broker and be under that real estate broker's supervision. (R.R. at 65-66.) Thus, Claimant was only allowed to list properties with Villager Realty and could not list properties with other real estate brokers. (R.R. at 66-67.)

Following her separation of employment from Geisinger, Claimant applied for UC benefits. The local service center determined Claimant was not disqualified from receiving UC benefits under section 402(h) of the Law, concluding she was not self-employed because she was not free from Villager Realty's direction and control in the performance of her job. (R.R. at 36.) Villager Realty appealed and a referee conducted a hearing.

On November 29, 2017, the referee affirmed the local service center's determination. In his decision, the referee concluded that the main issue before him was whether Claimant was self-employed and, therefore, ineligible for benefits under section 402(h) of the Law. (Referee's decision at 2.) The referee explained that, although the Law does not define "self-employment," courts have relied on the "independent contractor" test for determining whether a claimant is self-employed. *Id.* The referee noted that for purposes of UC eligibility, the existence of an independent contractor relationship is not established by the way the parties view themselves, but

---

[3] Before being separated from Geisinger, Claimant worked approximately 10 to 15 hours per week for Villager Realty; however, after her employment with Geisinger ended, Claimant "was able to start working more [and] devote more time to real estate" and worked approximately 25 hours per week. (R.R. at 69.) Claimant was also able to spend more time at Villager Realty's office following her separation from Geisinger. (R.R. at 70.) In 2016, Claimant was paid around $68,000.00 by Geisinger and $2,700.00 by Villager Realty. (R.R. at 68.)

3

instead, how they are viewed as a matter of the law. The referee also observed that the existence of a signed contract establishing an independent contractor relationship is not dispositive as a matter of law, and that the putative employer bears the burden of proving that the claimant was an independent contractor. *Id.*

The referee employed section 4(*l*)(2)(B) of the Law in order to determine whether Claimant was self-employed.[4] (Referee's decision at 2.) Specifically, the referee concluded that under the Law, services performed by an individual for wages are deemed employment unless it is established that (1) such individual was free from control or direction over the performance of such services under his contract of service; and (2) with regard to such services, the individual is customarily engaged in an independently established trade, occupation, profession or business. *Id.* With regard to the second prong, the referee identified several relevant factors, including whether the individual performs work that is customarily done by those in an independent business or trade; whether the individual holds himself out as capable of performing the work for anyone who desired the type of service at issue; and whether the nature of the business compelled the individual to look to only a single employer for the continuation of such services. (Referee's decision at 2-3.) The referee concluded that "[i]n this case the Claimant cannot perform these identical services for any other

_____

[4] Section 4(*l*)(2)(B) of the Law provides the following:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that--(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. §753(*l*)(2)(B).

broker." (Referee's decision at 3.) Thus, the referee "deem[ed] [] Claimant [to be] an employee rather than self-employed, and [determined that] benefits may not be denied under section 402(h) of the Law." *Id.*

Thereafter, Villager Realty appealed to the Board arguing that Claimant was ineligible for benefits under section 4(*l*)(4)(17) of the Law[5] because she was not an employee. The Board determined that section 4(*l*)(4)(17) is a "definition and does not, alone, grant or deny benefits. Benefits were granted here under [s]ection 402(h) of the Law, which provides that a claimant is ineligible for benefits for a week when self-employed." (Board order at 1.) The Board concluded that, "[b]ecause [s]ection 4(*l*)(4)(17) of the Law does not define self-employment, it is irrelevant here." *Id.* Accordingly, the Board decided that the referee's decision was proper under the Law, incorporated the referee's findings and conclusions, and affirmed the referee's order. *Id.*[6]

## Discussion

On appeal,[7] the only issue raised by Villager Realty is that the Board erred as a matter of law in determining that Claimant was an employee of Villager Realty,

---

[5] Section 4(*l*)(4)(17) of the Law provides in relevant part that "[t]he word 'employment' shall not include . . . [s]ervice performed by an individual for an employer as . . . [a] real estate salesman or as . . . a real estate broker . . . if all such service performed by such individual for such employer is performed for remuneration solely by way of commission. . . ." 43 P.S. §753(*l*)(4)(17).

[6] The Board also stated, as follows: "NOTE: The Department of Labor and Industry must investigate whether [Claimant] is 'an employee who is or becomes unemployed' under [s]ection 401 of the Law, a prerequisite to eligibility, as defined by [s]ection 4(*l*)(4)(17) of the Law." (Board order at 1.)

[7] Our review of the Board's order "is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether

given that she rendered services as a licensed real estate salesperson. Villager Realty maintains that Claimant was not its employee pursuant to sections 402(h) and 4(*l*)(4)(17) of the Law.

Villager Realty first argues that Claimant was an independent contractor and, therefore, not its employee. Villager Realty contends that Claimant was an independent contractor because she was free from its direction and control and was customarily engaged in an independently established trade, occupation, business, or profession. In particular, Villager Realty notes that Claimant had the right to meet new clients and to show them properties; her hours were not regulated; she could make her own appointments; she drove her own vehicle; she supplied her own laptop and cell phone; she was paid a commission for her sales, from which taxes were not withheld; and she was not required to attend meetings. Villager Realty contends that the Board and referee erred by focusing their analysis on the fact that Claimant could not conduct real estate services for other real estate brokers. Villager Realty claims that brokers do not dictate that real estate agents cannot work for other brokers, but rather, it is mandated under Pennsylvania law. Villager Realty points to section 603 of the Real Estate Licensing and Registration Act (Real Estate Act),[8] which states that "[n]o associate broker or salesperson . . . shall be employed by any other broker than is designated upon the current license issued to said associate broker or said salesperson." 63 P.S. §455.603. Villager Realty maintains that the fact that Claimant was prohibited by law from associating with other brokers did not, in and of itself, make her an employee of Villager Realty.

---

constitutional rights were violated." *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

[8] Section 603 of the Real Estate Act, Act of February 19, 1980, P.L. 15, *as amended*, 63 P.S. §455.603.

In contrast, the Board argues that, although the referee and Board determined Claimant was not self-employed, they did not find that Claimant was Villager Realty's employee. The Board maintains that there are various exceptions to "employment" under the Law and that a finding that one is not self-employed does not necessarily make one an "employee." The Board contends that its conclusion was limited to Claimant not qualifying as "self-employed" under section 402(h) of the Law. The Board asserts that, "[a]bsent a finding that a claimant was an employee of a purported employer or a challenge to the claimant's eligibility for benefits based on her separation from a previous employer, a purported employer's challenge of only the characterization of the employment relationship is meritless." (Board's Br. at 6.) The Board contends that whether or not Claimant is self-employed under section 402(h) is governed by the independent contractor test, *i.e.*, whether Claimant (1) performed her job free from Villager Realty's direction and control; and (2) was customarily engaged in an independently established trade, occupation, profession or business. The Board maintains that Claimant was not self-employed because she could only perform real estate services through Villager Realty.

The Board also claims that it is immaterial that Claimant was prohibited by law from working for other real estate brokers and relies on *Glen Mills School v. Unemployment Compensation Board of Review*, 665 A.2d 561 (Pa. Cmwlth. 1995), where we concluded a dental hygienist could not be self-employed as a matter of law based on a statute that prohibited dental hygienists from performing dental services unless they were directly supervised by a dentist. Similarly, the Board argues that, due to the requirements of the Real Estate Act, a real estate salesperson can never be an independent contractor. Because the statutory requirements of the Real Estate Act bound Claimant to one broker's control, the Board argues that Villager Realty did not meet its burden of demonstrating that Claimant was self-employed. Finally, the Board notes that its holding that Claimant is not self-employed only affects her eligibility for

benefits and not whether Villager Realty is liable for contributions for benefits, and that Villager Realty may still challenge the employment relationship under section 4(*l*)(4)(17) of the Law if it ever receives a financial determination holding it liable for contributions to Claimant's benefits.

We first note that Claimant's separating employer was Geisinger and that Claimant was deemed eligible to receive UC benefits upon separation from that employment. The question, here, is whether Claimant's relationship with Villager Realty, as a real estate salesperson, acts as a disqualifying event to now make Claimant ineligible for UC benefits. In other words, did Claimant's work as a real estate broker make her self-employed or otherwise ineligible to continue receiving UC benefits. Specifically, this case involves the intersection of section 402(h) of the Law with section 4(*l*)(4)(17) of the Law. We first analyze section 402(h) of the Law.

### 1. Section 402(h) of the Law

Pursuant to section 402(h) of the Law,

**An employe shall be ineligible for compensation for any week . . . [i]n which he is engaged in self-employment**: Provided, however, That an employe who is able and available for full-time work shall be deemed not engaged in self-employment by reason of continued participation without substantial change during a period of unemployment in any activity including farming operations undertaken while customarily employed by an employer in full-time work whether or not such work is in "employment" as defined in this act and continued subsequent to separation from such work when such activity is not engaged in as a primary source of livelihood. . . .

8

43 P.S. §802(h) (emphasis added).[9]

The term "self-employment" is not defined in the Law; however, this Court has relied on the "independent contractor" test in section 4(*l*)(2)(B) of the Law to determine whether claimants are self-employed. *Clark v. Unemployment Compensation Board of Review*, 129 A.3d 1272, 1276 (Pa. Cmwlth. 2015). Section 4(*l*)(2)(B) of the Law provides, in relevant part, as follows:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the [D]epartment [of Labor and Industry] that--(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B). "[B]efore a claimant will be declared to be self-employed, **both** elements of section 4(*l*)(2)(B) must be satisfied." *Silver v. Unemployment Compensation Board of Review*, 34 A.3d 893, 896 (Pa. Cmwlth. 2011) (emphasis added).

There is a presumption in the Law that an individual receiving wages is not engaged in self-employment. *Training Associates Corp. v. Unemployment Compensation Board of Review*, 101 A.3d 1225, 1233 (Pa. Cmwlth. 2014). However, "[t]his presumption can be overcome by establishing that the claimant was: (a) free from control or direction over the performance of such services both under her contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business." *Id.*

---

[9] While self-employed individuals who qualify for the so-called "sideline business exception" to section 402(h) of the Law remain eligible for UC benefits, here, the Board does not argue that Claimant's work as a real estate salesperson fits within the sideline business exception.

9

### a. First Prong of the Independent Contractor Test

With regard to the first prong of the independent contractor/self-employment test, the entity seeking to establish that a claimant is self-employed "must show a lack of control not only with regard to the work to be done, but also with regard to the manner of performing it." *Osborne Associates, Inc. v. Unemployment Compensation Board of Review*, 3 A.3d 722, 728 (Pa. Cmwlth. 2010) (internal quotation marks omitted). Factors typically considered by reviewing courts with respect to the first prong of the analysis, *i.e.*, whether the claimant was free from direction and control, include

> whether there was a fixed rate of remuneration; whether taxes were deducted from the claimant's pay; whether the presumed employer supplied equipment and/or training; whether the presumed employer set the time and location for the work; whether the presumed employer had the right to monitor the claimant's work and review his performance; and the requirements and demands of the presumed employer.

*Resource Staffing, Inc. v. Unemployment Compensation Board of Review*, 961 A.2d 261, 264 (Pa. Cmwlth. 2008). Further, "[n]o single factor is controlling, and, therefore, the ultimate conclusion must be based on the totality of the circumstances." *Id.*

Here, regarding the first prong of the independent contractor/self-employment test, Claimant's compensation was 100% commission based, Claimant received a 1099 tax form at the end of the year, and Villager Realty did not withhold taxes from Claimant's pay. (F.F. No. 6; R.R. at 66.) Claimant also supplied her own vehicle, computer, and cell phone, could "work as many or as little hours as she wishe[d]," and was "not closely supervised." (F.F. Nos. 11-12.) While Claimant had to maintain membership in several professional organizations, she was free to "call on people to get listings," "meet new clients to take them out and show them properties," "make her own appointments," and did not have to work in Villager Realty's office.

10

(F.F. No. 8; R.R. at 66-67.) Therefore, on balance, the relevant factors of the first prong do not establish that Claimant worked under Villager Realty's direction and control.

### b. Second Prong of the Independent Contractor Test

As to the second prong of the independent contractor/self-employment test, *i.e.*, whether Claimant was customarily engaged in an independently established trade, occupation, profession, or business, courts analyze the following factors: (1) whether the individual was "capable of performing [her] services to anyone who wished to avail themselves of the services and [was] not compelled to look to only a single employer for the continuation of such services"; (2) whether the individual was "dependent on [the presumed employer] for employment"; and (3) whether the individual was "hired on a job-to-job basis and could refuse any assignment." *Danielle Viktor, Ltd. v. Department of Labor and Industry, Bureau of Employer Tax Operations*, 892 A.2d 781, 792 (Pa. 2006).

The Board contends that Claimant was not self-employed because she could not work for any other real estate broker. It also argues that the fact that Claimant was prohibited by law from working for another real estate broker is irrelevant to the overall analysis.

In *Glen Mills*, 665 A.2d at 563, we encountered a similar issue. There, the claimant worked as a part-time dental hygienist, but the employer argued the claimant was ineligible for benefits because she was self-employed. *Id.* at 565. Under the law governing dental hygienists at the time, dental hygienists were required to work under the supervision of a licensed dentist and had to perform procedures in dentist offices or in public or private institutions, such as schools or hospitals. *Id.* We noted that, under the relevant statute, a dental hygienist **could not operate an independent business**, but had to operate under the supervision of a dentist, and that if a dental hygienist attempted to work independently, his or her license would be revoked. *Id.*

11

We concluded that the claimant could not be self-employed as a matter of law and, therefore, that she was not ineligible for benefits under section 402(h) of the Law. *Id.*; *but see Osborne Associates*, 3 A.3d at 733 (concluding that although relevant statutes governing cosmetologists, which restricted practicing outside of salons, were relevant to determining whether cosmetologist claimant was self-employed or not, statutes did not *ipso facto* establish that claimant was not self-employed).

As pertains to the instant case, section 603 of the Real Estate Act provides that "[n]o associate broker or salesperson . . . shall be employed by any other broker than is designated upon the current license issued to said associate broker or said salesperson." 63 P.S. §455.603. Similarly, section 522 of the Real Estate Act provides that when a real estate salesperson applies for a real estate license, "[t]he applicant shall submit a sworn statement by the broker with whom he desires to be affiliated certifying that the broker will actively supervise and train the applicant." 63 P.S. §455.522. The Real Estate Act also prohibits "[a]ccepting a commission or any valuable consideration by a salesperson or associate broker for the performance of any acts specified in this act, from any person, except the licensed real estate broker with whom he is affiliated." Section 604 of the Real Estate Act, 63 P.S. §455.604.

In *Jack Gaughen LLC v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1884 C.D. 2010, filed February 18, 2011),[10] we analyzed this section of the Real Estate Act as it relates to section 402(h) of the Law. Like here, in *Jack Gaughen*, the claimant worked as a real estate salesman and the purported employer argued the claimant was ineligible for benefits because he was self-employed. *Id.*, slip op. at 2. The claimant was paid on a commission basis and received a 1099 form for tax purposes, but he was only licensed to sell real estate through Jack Gaughen. *Id.*

---

[10] Pursuant to this Court's Internal Operating Procedures, an unreported opinion of the Court filed after January 15, 2008, may be cited for its persuasive value. 210 Pa. Code §69.414(a).

We concluded that, under the independent contractor test, Jack Gaughen could not demonstrate that the claimant was engaged in an independently established trade, occupation, profession, or business. *Id.*, slip op. at 6. We noted that the Real Estate Act prohibits a salesperson from working for more than one broker and relied on *Glen Mills* to conclude that "it would appear that a real estate salesperson can never be an independent contractor under the terms of Section 4(*l*)(2)(B)" of the Law. *Id.*, slip op. at 7-8.

Based on the reasoning of *Glen Mills* and *Jack Gaughen*, since the Real Estate Act prohibits Claimant from working for any real estate brokers other than Villager Realty we must conclude that Claimant was not self-employed. This is because, under the second prong of the independent contractor test, Claimant was not capable of performing her services for anyone else. Therefore, Claimant is not ineligible for UC benefits pursuant to section 402(h) and section 4(*l*)(2)(B) of the Law.

### c. Whether Claimant was Villager Realty's Employee

Although we conclude that Claimant is not self-employed and not ineligible for benefits pursuant to section 402(h) of the Law, this does not answer the separate question of whether Claimant is Villager Realty's employee, which is the main issue raised on appeal. Villager Realty argues that because the Board and referee concluded that Claimant was not self-employed and unartfully stated, "Claimant [was] an employee rather than self-employed," (Referee's decision at 3), it could be construed that Claimant was Villager Realty's employee. The Board argues that the mere fact that an individual is self-employed does not necessarily make that individual an employee. Although the referee did state that Claimant was an employee, **he did not expressly hold that Claimant was Villager Realty's employee**.

In light of the questions raised by the Board's language, we must address whether Claimant was an employee of Villager Realty. Our decision in *Training*

13

*Associates*, 101 A.3d at 1233, where we analyzed a similar issue, is directly on point regarding the question of whether Claimant is an employee of Villager Realty. In *Training Associates*, after the claimant was separated by her employer Accolade and deemed eligible for UC benefits, she found temporary employment with TTA. *Id.* The local service center concluded that the claimant was no longer eligible for benefits stemming from her separation from Accolade since she was at that point self-employed; however, the referee disagreed, deciding that the claimant was actually TTA's employee because she was not an independent contractor. *Id.* at 1227-28. In contrast, the Board found the claimant was not self-employed, but did **not** find that she was TTA's employee. *Id.* at 1230. On appeal, we concluded that the referee incorrectly applied an **either/or** analysis to determine that, because the claimant was not self-employed, she must be TTA's employee. *Id.* at 1233. We held that **the determination that the claimant was not self-employed did not mean that TTA would be charged as her employer**, and that because claimant was found not to be self-employed "she remained eligible to continue to receive UC benefits based upon her separation from her previous employment." *Id.*; *see also*, *Silver*, 34 A.3d at 899 (noting that the question of whether the claimant was self-employed after becoming separated from an employer and, therefore, ineligible for benefits under section 402(h) of the Law, could not be made using an **either/or** analysis because the question of whether the claimant was self-employed was different from the question of whether the claimant was an employee).

Moreover, we held that the claimant "remained eligible to receive UC benefits as a former employee of Accolade, without regard to her status with TTA. Since there was no finding that [the c]laimant was an employee of TTA or that TTA was [the] claimant's employer, there should be no effect on TTA as a result of the limited findings in this case." *Training Associates*, 101 A.3d at 1233. Thus, we held that "the finding that [the] [c]laimant was not self-employed for purposes of rendering

14

her eligible to continue receiving the UC benefits to which she was already entitled [did] not, in [that] case, mean that [the c]laimant was an employee of TTA." *Id.* at 1234; *cf. Sydnor v. Unemployment Compensation Board of Review*, 113 A.3d 378, 381 (Pa. Cmwlth. 2015) (stating that "there are various exceptions to 'employment'" under the Law). Finally, we noted that, because there was no finding by the Board that the claimant was an employee of TTA and TTA did not challenge the claimant's eligibility to continue to receive UC benefits based on her previous separation from Accolade, we did not need to address whether the Board erred by finding that the claimant was not an independent contractor. *Training Associates*, 101 A.3d at 1235 n.9.

Here, while both the referee and the Board found that Claimant was not self-employed, they did not expressly find that Claimant was an employee of Villager Realty. However, the referee did note that Claimant was an "employee." Under *Training Associates*, the analysis in these types of cases cannot be framed as an either/or situation. Because the sole issue before the referee and Board was whether Claimant was a self-employed realtor and, thus, ineligible to continue receiving UC benefits based on her separation from Geisinger, it was improper for the Board and referee to examine whether Claimant was Villager Realty's employee. *See Training Associates*, 101 A.3d at 1233, 1235. Accordingly, the referee and Board erred to the extent they framed their analysis as an either/or situation to conclude that, because Claimant was not self-employed, she was an employee.

In response to Villager Realty's concern that the language in the referee's decision stating, "Claimant [was] an employee," (Referee's decision at 3), would make Villager Realty liable for benefits, the Board argues that its conclusion that Claimant was not self-employed only impacts her eligibility for benefits and not whether Villager Realty is liable for contributions to benefits. Further, the Board states that the question of whether Claimant was Villager Realty's employee was immaterial to the question of whether Claimant was self-employed. *Id*. The Board argues that whether Claimant

15

was an employee of Villager Realty is a question for another day. Therefore, to clarify, we hold that while Claimant was not self-employed pursuant to section 402(h) of the Law, the Board did not hold that Claimant was Villager Realty's employee.

## 2. Section 4(*l*)(4)(17) of the Law

Lastly, we address whether Claimant is ineligible for benefits pursuant to section 4(*l*)(4)(17) of the Law. Villager Realty argues that section 4(*l*)(4)(17) of the Law mandates that "employment" does not include services performed by real estate salespersons who are paid solely by way of commission. Conversely, the Board claims that, because section 4(*l*)(4)(17) of the Law does not define "self-employment" as used in section 402(h) of the Law, section 4(*l*)(4)(17) is irrelevant to whether Claimant is eligible for benefits in this matter. The Board contends that even though Claimant worked as a real estate salesperson on a commission basis, she is not precluded from receiving benefits by section 4(*l*)(4)(17). The Board also notes that its holding that Claimant is not self-employed only affects her eligibility for benefits and not whether Villager Realty is liable for contributions for benefits, and that Villager Realty may still challenge the employment relationship under section 4(*l*)(4)(17) of the Law if it ever receives a financial determination holding it liable for contributions to Claimant's benefits.

Section 4(*l*)(4)(17) of the Law states as follows:

The word "**employment**" shall not include . . . **[s]ervice performed by an individual for an employer** as an insurance agent or **real estate salesman** or as an insurance solicitor or as a **real estate broker** or as a solicitor of applications for, or salesman of, shares of or certificates issued by an investment company, or as an agent of an investment company, **if all such service performed by such individual for such employer is performed for remuneration solely by way of commission**, or services performed by an individual as an unsalaried correspondent

16

for a newspaper, who receives no compensation, or compensation only for copy accepted for publication.

43 P.S. §753(*l*)(4)(17) (first emphasis in original).

There is only limited case law interpreting section 4(*l*)(4)(17) of the Law. In *Shoemaker v. Unemployment Compensation Board of Review*, 588 A.2d 100 (Pa. Cmwlth. 1991), the claimant became unemployed and began receiving UC benefits. *Id.* at 101. While receiving UC benefits, she completed a real estate training program and began working as a full-time, commission-based real estate agent. *Id.* Thereafter, the local service center found her ineligible for benefits because she was, *inter alia*, not "unemployed" under section 4(u) of the Law.[11] *Id.* On appeal to this Court, the Board argued that the matter should be remanded to determine whether the claimant was eligible for benefits under sections 4(u) and 4(*l*)(4)(17) of the Law. *Id.* at 102. We noted that the Board had found that the claimant was issued a license to sell real estate, the claimant became employed by Jack Gaughen Realtor after obtaining her real estate license, and the claimant was paid solely by commission. Thereafter, we reached the following conclusion:

> Applying section 4(*l*)(4)(17) of the [Law] to the [B]oard's findings of fact, we conclude that [the] claimant's employment was "performed for remuneration solely by way of commission . . . ." Even if [the] claimant was "employed" within the meaning of section 4(u), the facts show that she

---

[11] 43 P.S. §753(u). Section 4(u) of the Law defines "unemployed" as follows:

> An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him, or (II) with respect to any week of less than his full-time work if the remuneration paid or payable to him with respect to such week is less than his weekly benefit rate plus his partial benefit credit.

43 P.S. §753(u).

was a real estate salesperson working solely on commission and is, therefore still eligible for unemployment compensation benefits pursuant to section 4(*l*)(4)(17) of the [Law]. Because [the] claimant's employment status can be established relying solely upon findings made by the [B]oard, no remand is necessary, and we hold that [the] claimant was unemployed and entitled to benefits.

*Id.* at 103.

Subsequently, in *Spencer v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1318 C.D. 2015, filed April 1, 2016), we interpreted section 4(*l*)(4)(17) of the Law with regard to a similar set of facts. There, the claimant worked full-time for H&R Block from January to April and part-time from May to December. *Id.*, slip op. at 2. During the off-season, the claimant applied for and was granted UC benefits. While receiving benefits, the claimant was hired by AFLAC as a commission-based insurance salesperson. *Id.* The claimant's benefits were later discontinued and the claimant appealed. *Id.*, slip op. at 3. The Board determined that the claimant was ineligible for benefits under section 4(*l*)(4)(17) of the Law. *Id.*, slip op. at 6-7.

On appeal, we remanded to the Board to make additional factual findings and declined to affirm the Board under section 4(u) and section 4(*l*)(4)(17) of the Law. *Id.*, slip op. at 14. Based on *Shoemaker*, we noted that this Court had previously held that, "even if an individual receiving unemployment benefits is deemed 'employed' for purposes of section 4(u) of the Law, the individual is nonetheless still eligible to continue to receive unemployment compensation benefits when the individual received commission-based pay as stated in section 4(*l*)(4)(17) of the Law." *Spencer*, slip op. at 15. Accordingly we held that, "pursuant to *Shoemaker*, the fact that [the] [c]laimant may be considered 'employed' for purposes of section 4(u) [was] superseded by the fact that she [was] deemed to be 'unemployed' under section 4(*l*)(4)(17) because she [was] an insurance salesperson earning commission-based pay." *Id.*; *but see Sydnor*,

18

113 A.3d at 380-81 (In a case where the claimant was no longer able to work as a "direct seller," which is also considered an exemption to employment under section 4(*l*)(4) of the Law, we concluded that the claimant was ineligible for benefits because he was financially ineligible pursuant to the "direct seller" employment exception.); *Jack Gaughen*, slip op. at 5, 8 (suggesting that real estate salespersons who work solely for commission are not eligible for benefits under section 4(*l*)(4)(17) of the Law).

Based on the foregoing, we hold that section 4(*l*)(4)(17) of the Law does not disqualify Claimant from receiving UC benefits. In both *Shoemaker* and *Spencer*, we concluded that the claimants were not ineligible for benefits under section 4(*l*)(4)(17) of the Law where they were separated from employment and obtained subsequent employment as real estate and insurance agents respectively. Like those cases, here, Claimant was separated from her employment with Geisinger and thereafter worked as a real estate salesperson for Villager Realty, which paid her solely by commission. Pursuant to our case law, we conclude that Claimant's work for a real estate company following her separation of employment from her previous employer does not prevent her from receiving benefits under section 4(*l*)(4)(17) of the Law.

Although this Court in *Sydnor* and *Jack Gaughen* suggested that a claimant is not **financially eligible** for benefits whenever his or her work is considered an exception to employment under section 4(*l*)(4) of the Law, those cases did not address the separate issue of whether a claimant, who is initially deemed eligible for benefits following his or her separation of employment, remains eligible for benefits when he or she finds new work that is considered an exception to employment under section 4(*l*)(4) of the Law.[12]  Here, because Claimant's separating employer was not Villager Realty, but rather Geisinger, Claimant's ongoing real estate work for Villager

---

[12] We observe that in cases where a claimant's **separating employer** is a real estate company and the claimant is paid solely by way of commission, the claimant is financially ineligible for benefits. *See* 4(*l*)(4)(17) of the Law, 43 P.S. §753(*l*)(4)(17); *cf. Sydnor*, 113 A.3d at 380-81.

19

Realty following her separation from Geisinger does not disqualify her from continuing to receive UC benefits under section 4(*l*)(4)(17) of the Law.

## Conclusion

Because Claimant is not considered self-employed pursuant to section 402(h) of the Law and Claimant's work for a real estate company following her separation of employment from her previous employer does not disqualify her from continuing to receive UC benefits under section 4(*l*)(4)(17) of the Law, we affirm the Board's order finding Claimant eligible for benefits. However, we diverge from the Board's and the referee's analyses, to the extent they suggested that Claimant was an employee of Villager Realty, because that issue was not properly before them. Therefore, to clarify, we note that the Board and referee did not hold that Claimant was an employee of Villager Realty.

_____
PATRICIA A. McCULLOUGH, Judge

Senior Judge Leadbetter dissents.

20

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Villager Realty of Bloomsburg,    :
          Petitioner    :
                                :   No.  805 C.D. 2018
        v.                  :
                                :
Unemployment Compensation    :
Board of Review,               :
          Respondent

## ***ORDER***

AND NOW, this 4th day of June, 2019, the May 2, 2018 order of the Unemployment Compensation Board of Review is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge